# E-filing

1  PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

2  Name  Beal        Lafrance

      (Last)      (First)      (Initial)

**FILED**

3  Prisoner Number  P-01542

4  MAR 2 8 2008

5  Institutional Address  P.o. Box 1050 Salinas State prison Soledad ca 93960

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

6

7  **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

8  LaFRANCE BEAL

(Enter the full name of plaintiff in this action.)

CV 08    1705

9

      vs.

10  Evans

Case No. 123338

(To be provided by the clerk of court.)

11

PETITION FOR A WRIT
OF HABEAS CORPUS

**TEH**

**(PR)**

12

13

14  (Enter the full name of respondent(s) or jailer in this action)

15

16  Read Comments Carefully Before Filling In

17  When and Where to File

18      You should file in the Northern District if you were convicted and sentenced in one of these

19  counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20  San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21  this district if you are challenging the manner in which your sentence is being executed, such as loss of

22  good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23      If you are challenging your conviction or sentence and you were not convicted and sentenced in

24  one of the above-named fifteen counties, your petition will likely be transferred to the United States

25  District Court for the district in which the state court that convicted and sentenced you is located. If

26  you are challenging the execution of your sentence and you are not in prison in one of these counties,

27  your petition will likely be transferred to the district court for the district that includes the institution

28  where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS    - 1 -

1  Who to Name as Respondent

2      You must name the person in whose actual custody you are. This usually means the Warden or

3  jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced. These are not proper

5  respondents.

6      If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10  A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11      1. What sentence are you challenging in this petition?

12          (a)    Name and location of court that imposed sentence (for example; Alameda

13                 County Superior Court, Oakland):

14          <u>HAyward Superior Court</u>          <u>Amador St. Hayward, CA 94544</u>

15                 Court                                Location

16          (b)    Case number, if known  <u>123338</u>

17          (c)    Date and terms of sentence <u>MAY 1, 1998  64yrs to life and 4 months</u>

18          (d)    Are you now in custody serving this term? (Custody means being in jail, on

19                 parole or probation, etc.)        Yes <u>✓</u>   No ____

20                 Where?

21                 Name of Institution: <u>Salinas Valley State Prison</u>

22                 Address: <u>P. O. Box 1050 Soledad Ca 93960</u>

23      2. For what crime were you given this sentence? (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known. If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26  <u>187 First Degree Murder And five false imprisonments . Penal Code</u>

27  <u>P.C 236</u>

28

PET. FOR WRIT OF HAB. CORPUS        - 2 -

3. Did you have any of the following?

    Arraignment:                              Yes _X_    No _____

    Preliminary Hearing:               Yes _X_    No _____

    Motion to Suppress:                Yes _X_    No _____

4. How did you plead?

    Guilty _____    Not Guilty _X_  Nolo Contendere _____

    Any other plea (specify) _No_

5. If you went to trial, what kind of trial did you have?

    Jury _X_    Judge alone _____  Judge alone on a transcript _____

6. Did you testify at your trial?             Yes _____    No _X_

7. Did you have an attorney at the following proceedings:

    (a)    Arraignment                   Yes _X_    No _____

    (b)    Preliminary hearing          Yes _X_    No _____

    (c)    Time of plea                  Yes _X_    No _____

    (d)    Trial                          Yes _X_    No _____

    (e)    Sentencing                     Yes _X_    No _____

    (f)    Appeal                        Yes _X_    No _____

    (g)    Other post-conviction proceeding    Yes _X_    No _____

8. Did you appeal your conviction?        Yes _X_    No _____

    (a)    If you did, to what court(s) did you appeal? _First Appellant District, Division 5_

             Court of Appeal            Yes _X_    No _____

             Year: _12/10/99_    Result: _Denied_

             Supreme Court of California    Yes _X_    No _____

             Year: _3/1/2000_    Result: _Denied_

             Any other court _U.S northern District court_ Yes _X_    No _____

             Year: _1/11/2002_    Result: _Denied  see Exhibits 1-8_

    (b)    If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS      - 3 -

petition?                                                    Yes  X    No____

    (c)   Was there an opinion?                               Yes  X    No____

    (d)   Did you seek permission to file a late appeal under Rule 31(a)?

                                                             Yes____    No  X

        If you did, give the name of the court and the result:

_____

_____

9. Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal?                Yes____    No  X

    [Note:  If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition.  You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit  28 U.S.C. §§ 2244(b).]

    (a)   If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding.  Attach extra paper if you need more space.

        I.    Name of Court: _____

            Type of Proceeding: _____

            Grounds raised (Be brief but specific):

            a._____

            b._____

            c._____

            d._____

            Result: _____Date of Result:_____

        II.   Name of Court: _____

            Type of Proceeding: _____

            Grounds raised (Be brief but specific):

a._____

b._____

c._____

d._____

Result: _____Date of Result:_____

III.  Name of Court: _____

Type of Proceeding: _____

Grounds raised (Be brief but specific):

a._____

b._____

c._____

d._____

Result: _____Date of Result:_____

IV.  Name of Court: _____

Type of Proceeding: _____

Grounds raised (Be brief but specific):

a._____

b._____

c._____

d._____

Result: _____Date of Result:_____

(b)  Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes \_\_\_\_    No \_X\_

Name and location of court: _____

B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS          - 5 -

*I REWROTE THIS SEE PETITION pg. 6*

1  need more space. Answer the same questions for each claim.

2      [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3  petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5      Claim One: INEFFECTIVE ASSISTANCE OF Counsel SEE Ground 1 A Pgs 1-7 Back

6  up ALL I.A.C claims with a Showing of Prejudice

7      Supporting Facts: SEE Pgs 5A-5A9 Supporting facts And Briefly Tells my story (claim 1)

8  SEE Pgs 1A- 11A Pertinent Fact which my conviction is Based. SEE pgs 2-5

9  Supporting facts Stated. SEE pgs 12-13 Supporting facts Stated. SEE 894-900 1147

10  1148 See EXHIBITS 1157-1154 included to Support (claim 1) see cont pg

11      Claim Two: Appellant's Federal constitutional Rights to Present his defense

12  And due process of law were Violated when trial court Quashed his Subpoena con pg

13      Supporting Facts: SEE pgs 1-2 °Opposition TO MOtion to Quash Subpoena° see Attached

14  Article. SEE pgs 2B1-13 Claim #2 Supporting facts: SEE pgs 867-870 which support

15  claim #2. SEE continuation pg D°Exhibit also Supports claim #2. SEE EXHIBIT pg 477

16  Supports claim #2. Holmes V. South Carolina  Third party Culpability Supports

17      Claim Three: Newly discovered evidence New claim 3# Prosecutor Misconduct: Statement and facts See

18  Exhibits 1-7 and cont pg. New claim 4# Jury Misconduct: Statement and facts con pg

19      Supporting Facts: _____

20  _____

21  _____

22  _____

23      If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25  _____

26  _____

27  _____

28  _____

PET. FOR WRIT OF HAB. CORPUS      - 6 -

6. Ground 1: INEFFECTIVE ASSISTANCE OF COUNSEL SEE GROUND 1A pgs 1-7 Backs up ALL I.A.C CLAIMS WITH A SHOWING OF PREJUDICE.

A. Supporting Facts:

SEE pgs 5A1-5A9 Supporting Facts AND BRIEFLY TELLS My STORY (CLAIM 1)
SEE pgs 1A-11A PERTINENT FACTS WHICH My CONVICTION is BASED
SEE pgs 2-5 Supporting Facts STATED
SEE pgs 12-13 Supporting Facts STATED
SEE pgs 894-900, 1147-1148 SEE EXHIBITS 1151-1154 INCLUDED TO Support (CLAIM 1)

BACK up ALL I.A.C CLAIMS WITH A SHOWING OF PREJUDICE I.E THAT THE MISTAKE WHICH PETITIONER ATTORNEY MADE CHANGE THE OUTCOME OF THE TRIAL.

SEE CONTIN pg Supporting INEFFECTIVE ASSISTANCE CLAIM Ground 1: A

b. SEE pgs 6-10, 14 EXHIBITS 'B' HEREIN POINTS AND AUTHORITIES: Supporting CASES
~~PERTINENT FACTS~~

7. GROUND 2: APPELLANT'S FEDERAL CONSTITUTIONAL RIGHTS TO PRESENT HIS DEFENSE AND DUE PROCESS OF LAW WERE VIOLATED WHEN TRIAL COURT QUASHED HIS SUBPOENA DUCES TECUM FOR POLICE INVESTIGATION RECORDS AND DENIED HIS MOTION TO PRESENT EVIDENCE THAT THE CRIME HAD BEEN COMMITTED BY OTHER PERSONS. ↓↓↓ A SUPPORTS Ground 2#

A. Supporting Facts:
SEE pgs 1-2 "opposition To MOTION To Squash Subpoena "SEE ATTACHED ARTICLE.
SEE pgs 2B1-13 CLAIM 2# Supporting Facts
SEE pgs 867-870 WHICH Support CLAIM 2#
SEE CONTINUATION pg 'D' EXHIBIT Also Supports CLAIM 2#
SEE EXHIBIT pg 477 Supports CLAIM 2#

Holmes V. South Carolina, 126 S.ct 1727 THIRD PARTY culpability Supports

b. SEE Ground Two B1 EXHIBIT #TABLE OF AUTHORITIES PERTINENT FACTS"

SEE CONTINUATION pg CLAIM 3#

NEW Ground 3# PROSECUTOR MISCONDUCT : STATEMENT AND FACTS SEE EXHIBITS 1-7 AND continuation pg : Supporting case LAW

NEW GROUND 4# Jury MISCONDUCT : STATEMENT AND FACTS SEE Pgs EXHIBITS 9, 10, 11, 12, IN Support OF STATEMENT And FACTS • SEE ALSO 9-12c

NEW Ground 5# PROSECUTOR MISCONDUCT : IMPARTIAL OF THE JUDGE SEE EXHIBIT 'E' california CODE OF Ethics Supporting case on continuation pg OF Cases • SEE CONSTITU-TIONAL VIOLATIONS — Supporting CONSTITUTIONAL VIOLATIONS

1    List, by name and citation only, any cases that you think are close factually to yours so that they

2  are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning

3  of these cases:

4  _____ SEE EXHIBIT "IT" _____

5  _____ Simular cases _____

6  _____

7  Do you have an attorney for this petition?                    Yes____    No X

8  If you do, give the name and address of your attorney:

9  _____

10    WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11  this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13  Executed on _3/25/08_____              _Lafrance Beal_____

14              Date                          Signature of Petitioner

15

16

17

18

19

20  (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS          - 7 -

INEFFECTIVE ASSISTANCE OF COUNSEL

GROUND 1A - Pg 1-7

G R O U N D   O N E :1 A-  ⸱⸱ PG 1—7

Petitioner in the instant case hereby contends the denial of the effective and competent assistance of counsel, as is so guaranteed at all stages of a criminal proceeding, via the prophylactics set forth in both the California and United States Constitution.

Consequently, the verdict arrived at subsequent to the retirement of the juror's deliberation in the instant case is equally unconstitutional, as it was primarily founded upon the tainted fruit exploited by the District Attorney which was unequivocally born out of counsel's admitted negligence and incompetent assistance. Summarily, the jury verdict rendered in the instant case must be set aside in an unyielding interest of justice, as is equally demanded by way of the irrefutable facts and supporting Case-law set forth herein. For this remedy petitioner prays.

///

///

///

PAGE 1

SUPPORTING   FACT:

The following facts are not particularly in dispute, as they are a matter of facts as have been testified to as so being by petitioner's dismissed trial counsel, Public Defender Mr. James McWilliams, and the endorsement of said facts by the Superior Court Magistrate in the instant criminal trial as being the evidence that substantiated said counsel's ineffective assistance, and consequential negligence that prompted the basis for counsel's self-initiated and subsequently ordered removal as petitioner's trial counsel. On September 27, 1996, petitioner was being represented by P.D. McWilliams in this instant action, with a trial date set for 9/30/00. On 9/27/00, while disclosing the transcribed statement of an alibi witness to D.A. Jeff Stark,

Counsel inadvertently disclosed a transcribed statement of a witness that the defense had interviewed, and had subsequently decided not to call to trial to testify. The facts that's been set forth in relative proceedings in this action clearly dictates that Defense Counsel McWilliams had intended to turn over one statement, that of Darren Collins, to the District Attorney and not that of Monica Woods, of which whose damaging transcribed interview is the topic of this issue at bar. Ms. Woods states in this controversial transcript that petitioner made an admission of complicity in the underlying homicide. D.A. Starks notified P.D. McWilliams that he had the statement. McWilliams urged Starks to return the statement of Monica Woods without incident, however, to no avail.

CONTINUATION OF SUPPORTING FACTS:

On September 30, 1996, P.D. McWilliams tried to motion the court to compel the D.A. not to pursue any investigation pending a full court hearing; this request was denied.

On February 18, 1997, the court denied the defense motion to exclude the witness Monica Woods, and refused to issue any protective order. The issue was briefed and was summarily denied by the State Appellate Court, and the request for a rehearing in the California Supreme Court was summarily denied. Petitioner's counsel may be noted as having lost the document in question, but would ask this Court to take a judicial notice of it's file. Without issuance of an alternative writ or order to show cause, an order denying a petition for writ does N O T establish the law of the case, even if accompanied by a statement of reason (Kowis Vs. Howard (1992) 3 C.4th 888, 12 Cal. Rptr. 2d 728).

On August 8, 1997, in the Superior Court of Alameda County, Dept. No. 7, Public Defender James McWilliam filed a "DECLARATION OF CONFLICT OF INTEREST." Said declaration was granted, as the Judge at bar in said action found good cause pursuant to the order of removal rendered in relations hereto (SEE ATTACHED EXHIBIT "A"). As will be illustrated, petitioner incorporates several subdivisional grievances in this particular argument, and for the sake of

PAGE 3

CONTINUATION OF SUPPORTING FACTS:

clarity and to facilitate a comprehension of petitioner's legal posture, it would be well to proceed in the interest of such as follows. It is in part, petitioner's argument that D.A. unequivocally engaged in absolute prosecutoral misconduct of constitutional proportion by not only continuing to read a transcript that was obviously not intended for him to read, but he compoundingly advanced his over zealousness when he went out to interview Monica Woods as to the contents of her statement, of which he may only logically be presumed to know that he had no express permission from the defense, and therefore as a result of the present circumstances no legal authority to be in possession of.

The protection afforded to the accused via Article 1, § 15 of the California Constitution, and the Sixth Amendment of the United States Constitution, enables a defendant to speak freely with their attorney. Moreover, if the District Attorney in the instant case, given the suspect circumstances that gave rise to his unauthorized possession of said document, may be said to have a constitutional foundation upon which he is allowed to use the statement of Monica Woods, then it may be equally said with the same constitutional magnitude that a defendant is only protected when he has an attorney who never makes mistakes. Such a rhetorical proposition would never find the most remote support of our State and Federal Constitution, as it's legal endorsement would ridicule the efforts and intentions of it's Founding Fathers, and equally renders any presumed constitutional prophylactic against the ineffective assistance and sheer negligence of counsel meaningless. In light hereof, in

PAGE 4

CONTINUATION OF SUPPORTING FACTS:

the interest of justice this Court must compel itself to provide petitioner
with an adequate remedy whose compensation in no way punishes petitioner with
the legally inconceivable admission of Monica Woods testimony in what could
only be deemed an appropriate constitutionally afforded retrial for the
underlying homicide in the instant case, seeing that it's entry into trial
was exclusively the sole results of petitioner's counsel's reckless negligence.
The removal of counsel remedy is quite logically insufficient, as it still
in all provides petitioner with absolutely no relief of counsel's critically
damaging error.   Strickland V. Washington, 466 U.S. 668 (1984) performance
was constitutionally ineffective and results in a procedural default.


///


///


///


///

## MEMORANDUM OF POINTS AND AUTHORITIES:

The following points and authorities will address the current law of the attorney-client relationship and privilege, how the law of prosecutorial discovery applies to and the issue of whether third-party statements are also protected.

In summary, the case law that has addressed the prosecution's acquisition of confidential defense material—whether from the defendant or other material not directly within the attorney-client privilege, and whether obtained by an intentional act or inadvertence, have either ordered the case dismissed, or found that the trial court has isolated the material from the trial such that no use of it occur at trial.  No case was found that permitted the use of defense confidential materials coming within the possession of the prosecution.

THE RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL INCLUDES INVESTIGATION OF WITNESSES AND OTHER MATERIALS.  In People v. Benally (1989) Cal. App. 3d 900, the appellate court was urged to dismiss a criminal conviction because the state had acquired confidential information from the defense.

In this case police had unintentionally taped a conversation between the defense attorney and the defense attorney's investigator while they were viewing the evidence collected at the police department.  Although no attorney-client conversations were revealed, the court did not find this defeated the motion on whether the prosecution had gained "unfair advantage."  However, in Benally,

PAGE 6

the trial court had ordered the tape sealed, directed the detective who had heard the tape not to discuss its contents, and ordered that to any question the defense raised an objection, the prosecution would be required to show that the information or evidence was derived form a source other than the tape. In **Benally**, although one prosecution was aware of the existence of the tape, that prosecutor never listen to the tape, and was only advised of a small portion of its contents, involving the defense attorney's description of that prosecutor. The trial prosecutor never was told about the existence of the tape. The **Benally** court acknowledge the law that dismissal could be appropriate only if there was a showing of prejudice or the substantial threat of prejudice.

In **People v. Garewal (1985) 173 Cal.App. 3d 285, the appellate court was urged to dismiss a criminal conviction because the state had acquired confidential information from the defense.** In this case, the prosecution had been initiated in Imperial County, but was moved to Orange County. Incident to which an Imperial County Deputy District Attorney offered to transport the defense files to the Orange County Public Defender. In doing so he reviewed the files, purportedly to assure complete discovery, and **inadvertently** read a portion of a transcript of a defense investigator's incriminating interview of defendant.

Material outside the direct conversation exchange between an attorney and a client was found confidential and within the client's Sixth Amendment right to the effective assistance of counsel in other cases.

A. SUPPORTING FACTS:
    AND BRIEFLY TELLS MY STORY (CLAIM 1)

Pgs. 5A1-5A9

# Claim 1*

## Supporting Facts:

Petitioner contends On August 25th 1994, Joseph Spencer died of multiple gunshot wounds in the livingroom of the apartment of Sherry Thanars in Oakland, California. About ten o'clock in the eveniny on August 24, Ms. Thanars was at her apartment with her Alena Bell, Alena's five children, Felelishu Ross (the aunt of Ms. Thanars' sister's husband), Felelisha's sister, Keesha, Ms. Thanars' friend, Erie, and her Friend Cleveland Burgie. They were playing dominoes. unexpectedly, two men walked in the door, and one of them pointed a gun at Ms. Thanar's head and asked her if She Knew Joe. Joe Spencer was Ms. Thanars' boyfriend, but she denied Knowing him.

At trial, Ms. Thanars identified Petitioner as the persen who pointed the gun at her and asked her this question. She Said that he insisted she did Know Spencer, and ordered her to page him. Ms. Thanars picked up the phone and intentionally dialed the wrong number.

Ms. Thanars' Friend Cleveland Burgie Spoke to the gunman and the gunman hit him, Saying he was not Joking and this was a life or death matter. The man then ordered Ms. Thanars to call Spencer again. She paged Spencer and asked him to come over, but he declined. The gunman ordered Thanars to page him, and entice him to come by offering to have Sex with him. She complied, and Spencer told her he would come over later, after he finished watching a movie.

(5A1)

The group then waited for 20 or 30 minutes for Spencer to arrive. While they were waiting, the gunman said to Alena that she would "remember who he was if he told her who his family was." Then, to Erie, he said, "you think I'm playing?" He took her into the back room, and Ms. Thanars heard a sound like a slap. During this, the second man stayed near the front door. Finally, a car horn beeped, and Spencer called up to the apartment from the parking lot. The gunman had ordered Ms. Thanars to put on a fancy nightgown, and, at his direction, she went to window and told Spencer she had a surprise for him. They made all the other people in the apartment lie on the floor in the hallway.

Spencer entered the apartment and saw the gunman; he pushed Thanars and she fell over the table, crawled into the kitchen and hid. Both gunmen started shooting. Thanars did not see the shooting from her location, but heard many shots. Then the shooting stopped, and Thanars heard someone say, "let's go." The gunmen left the apartment. Spencer was lying on the floor. Thanars and her friends were afraid if they told what had happened the gunmen might return and retaliate. They also feared the police might think they had something to do with the shooting. They agreed they would tell the same story: they were all asleep and some unknown men came in and shot Joe. At trial, Ms. Thanars explained that her initial statement to police, including her statement that she could not identify either man, was a false statement given according to this agreement.

(5A2)

Her subsequent statements, recounting the events as above, were the truth. Ms. Thanars    then went to texas. While there, she received a letter from the Oakland police,    with some photographs for her to view. She recognized one of the photos, and phoned Sergeant Wallace to tell him. The person depicted was appellant.

However, Ms. Thanars testified that the gunmen she identified as    Petitioner    had a gold tooth or teeth in the front part of his mouth.    Petitioner    does not have a gold tooth. Ms.    Thanars acknowledge that she had never seen the person she identified as    Petitioner    before the night of the shooting.

Alena Bell testified that while they were all waiting for Spencer, one of the gunmen asked if she remembered him, and told her that he had gone to school with her and if he told her his name she would know who he was. He said he also knew her family. The man called her Nettie. Nobody at school would know her by that name, which is taken from her middle name of Antoinette. Only her family and close friends called her that. Alena, however, did not remember the assailant or recognize him. Alena testified that she had never seen either of the two gunmen prior to the night of the shooting. Like Ms. Thanars, Alena initially told the police she had seen nothing because she was asleep when the men came into the apartment, but later gave an account consistent with Ms. Thanars' trial testimony . . . .

(5A3) continue A4

However, five days after the crime, Alena selected a photograph of Petitioner from a photo lineup, and identified him as one of the assailants. She also identified him in court at the preliminary hearing. At trial, she identified appellant as one of the gunmen. However, like Ms. Thanars, she had previously testified that the assailant she identified as Petitioner had a gold tooth in the top of his mouth. She also told the police at the police station that the assailant had a gold tooth. She stated that she had not discussed the gold tooth with Ms. Thanars. She acknowledge that, at the preliminary hearing, Petitioner was directed to smile, and she could see that, unlike the assailant, Petitioner did not have a gold or silver tooth. Looking at his smile again at trial, Alena again acknowledge that he had no gold teeth. Alena also agreed that, adding up the time she has been in the courtroom at trial and the time she spent in the courtroom at the preliminary hearing, she has spent a lot more time in court looking at petitioner than she did in the apartment looking at the assailant.

Felelisha Ross testified to much the same effect as Ms. Thanars and Ms. Bell. Before the preliminary hearing, Ross selected a photo of Petitioner from a photo lineup. She identified him as one of the shooters at the preliminary hearing.

Felelisha admitted that, although at trial she stated that Petitioner's skin was the same color as the gunman's skin, she had testified at the preliminary hearing that Petitioner's skin was darker than the skin of the gunman.

Felelisha admitted she had initially lied to police, but → 5A5

(5A4) Continue A5

Stated that once she was at the police station downtown and the police told her she was going to stay in that room entil she told the truth, she told the truth. Felelisha Further admitted she had lied under oath at the preliminary hearing by saying she had never talked with the others about a plan to lie to the police, because they did have such a plan.

Cleveland Burgie stated at trial petitioner was not one of the gunmen. Burgie acknowledge that right after the shooting, he had stated that he knew one of the shooters, and the guy's name was lafrance. However, those statements were not true. He knew that Ms. Thanars and Alena Bell had told the police that he knew one of the men, so he decided to agree with this statement, but it was a lie. In truth, LaFrance was Just a name he had heard, he did not really know him. His testimony at the preliminary hearing, to the effect that he recognized the shooter as a person he knew named      laFrance, was also false. He knows laFrance Beal, from the fourth grade, but Beal was not one of the shooters.

The physical description he gave to the police was also false. Actually, the shooter weighed about 200 pounds, and was six feet two. The reason he lied at the preliminary hearing was that he himself was being prosecuted at that time, and he did not want to displease the prosecution. He knew that if he testified at the preliminary hearing that Beal was not the man he remembered seeing at the encounter, the prosecutor would not be happy with him. Also, when the police took his statement, they threatened that if he did not cooperate with them, he might be prosecuted as an accessory.

(5A5)

Otherwise, he would not have given the statement that he gave. In a previous interview with the deputy district Attorney, he told him that Beal was not the person who was in the apartment. This was true; Beal was not in the apartment.

Erie Robinson gave much the Same account of the incident As Ms. Thanars, Alena Bell, and Cleveland Burgie. She identified Petitioner in court at trial as one of the gunmen. She said that, during the incident, Petitioner ran up to Burgie and Said he better not tell anyone his name. He Started hitting Burgie until he said he would not tell. Erie testified that, like her Friends, she initially lied to the police, saying that they had all been asleep and not Seen what happened, and then later admitted that this was not true. After that admission, she also Selected Petitioner's photograph from a photo lineup. She admitted, however, that in considering the photo lineup, there were actually two photos that she considered "real good" before Selecting Petitioners photo. Erie acknowledge that she did not identify Petitioner at the preliminary hearing, but said it was because she was scared and does not like to be a Snitch. At trial she Stated she was Sure Petitioner was one of the assailants.

John Stewart, a neighbor of Ms. Thanars who also Knew Spencer, Saw spencer arrive in the parking lot shortly before he was Shot. Then after the Shooting Stewart Saw two people run down the Steps dressed all in Black, wearing Black Ski Masks. Stewart went up to the apartment, found Spencer, and called police. IN evidence they have a "Black Beanie" No Black SKi MASKS is attach to it

(5A6)

He gave a description of the assailants to the police.
One was five eight or five nine, small build, carrying a .38
caliber revolver. The other was about an inch shorter, also
of small build, and was carrying what look like a Glock
pistol. Stewart testified that a Glock is the "same as an uzi,"
and it is "long and square.

Paul Vasser, a catholic priest, stated that police had called
him in August of 1994, inquiring whether he knew a former
student named "lafonz". He said he had known a person
named Lafrance Beal, which was sort of close to the name
they gave him. He gave police a photograph of lafrance Beal,
and police subsequently used the photo in the photo lineup
that was shown to witnesses. Vasser identified appellant in
court as the Lafrance Beal he used to know, and whose
photograph he had given to police.

petitioner
          was arrested at his home. He was cooperative and made
no attempt to flee. In his bedroom, police found a black knit
cap and black denim pants. Also in the room was an empty
box from a Lorcin .380 caliber semiautomatic handgun.
However, analysis of spent bullets found at the crime
scene showed that, while they came from two different guns,
they could not have been fired from a lorcin .380

                                petitioner
Monica Woods testified that the            was her boyfriend.
She acknowledge that she had given a statement to a public
defender investigator, claiming that  petitioner  had implicated
himself in the crime, but she testified at trial   that her
statement to the investigator was false.

(5A7)

She testified that she had also told a prosecution investigator before trial that the statement was false. She said she was telling the truth at the trial, knowing she must do so when under oath. The things she told the investigators were just things she had heard from other people, not from Petitioner himself. Also, she knew some of the facts of the case from having read articles about it in the newspaper.

Jon Madarang, an Oakland Police Sergeant, stated that he had interviewed Ms. Woods in the presence of a deputy district attorney. Ms. Woods told them that Petitioner had admitted to her that he had participated in the murder of a man that had been harassing him. According to Madarang, Woods told him that Petitioner told her that he and a companion surprised the victim by hiding behind the door as he came into an apartment, and then they started shooting.

Madarang testified that on a subsequent occasion, about a month before the trial, he again interviewed Ms. Woods. On that second occasion, she said that when she told that Petitioner had admitted his participation, that was a lie. She said she lied "because she was not under oath." She said that when she talked to the public defender investigator, she had told him the same lie.

Darren Collins testified that, at the time of the shooting, Petitioner was with him at his house. Petitioner came to Collins about 9:45 in the evening to stay with Collins, who is "wheelchair-bound," while brother went out to a nightclub.

5A8

When Collins' brother got home about 2:45 in the morning, Petitioner was still there.

Collins Brother, Ronald Oler, confirmed that Petitioner had spent the night at their house on the wednesday before he was arrested. Oler was able to pinpoint the night as a wednesday because he went out to a club called Bogie's which is only open on wednesdays. Petitioner arrived that evening about Ten'oclock. Oler called home to check in on his quadraplegic brother about three to four times, and came home around 1:30 p.m. Petitioner was still there when oler got home.

( 5 A 9 )

STATEMENT OF PERTINENT FACTS
PG1A—11A

ATTORNEY MR. McWILLIAMS INCOMPETENCE, NEGLIGENCE RESULTED IN A FUNDAMENTALLY
UNFAIR PROCEEDING OR AN UNRELIABLE VERDICT. ATTORNEY ERROR CONTRIBUTE TO THE
VERDICT AND PREJUDICE HIS CLIENT BY INADVERTENT DELIVERY AND MISHANDLING MATERIALS
WHICH HAD SUBSTANTIAL AND INJURIOUS EFFECT OR INFLUENCE IN DETERMINING THE JURY
VERDICT. [CITATION] UNCONSTITUTIONAL TRIAL ERROR TRANSCRIPT PGS. 894-900 WAS
FUNDAMENTALLY UNFAIR TRIAL ERROR CONSTITUTIONAL MAGNITUDE LED TO A TRIAL THAT
WAS SO FUNDAMENTALLY UNFAIR THAT, ATTORNEY HARMful ERROR ABSENT THE ERROR,
NO REASONABLE JUDGE OR JURY WOULD HAVE CONVICTED PETITIONER. MY ATTORNEY
NEGLIGENCE AND DEFICIENT PERFORMANCE WAS THE INADVERTENCE STATEMENT
GIVEN BY ATTORNEY HIMSELF. ATTORNEY NEGLIGENCE VIOLATED PETITIONER CONSTITUT-
IONAL RIGHTS TO A FAIR TRIAL. THIS "HARMful ERROR" WAS THE FRUIT AND CONTRIBUTE
TO THE VERDICT. ERROR BY DEFENSE LIGHTEN THE PROSECUTOR BURDEN. AFTER
DEFENSE ATTORNEY COMMITTED THE HARMful ERROR BY SENDING THE WRONG STATE-
MENT TO THE D.A A STATEMENT MADE IN CONFIDENCE IN THE COURSE OF THE LAWYER-
CLIENT RELATIONSHIP. PREJUDICE THE PETITIONER, AFTER HE REALIZED HIS NEGLIGENCE
PETITIONER ATTORNEY FILED A "CONFLICT OF INTEREST" WHICH AFFECTED THE RIGHT
TO EFFECTIVE COUNSEL. LEGAL NECESSITY REQUIRES A MISTRIAL, AND THE
DEFENDANT'S CONSENT TO THE MISTRIAL IS UNNESSARY. People V. MCNALLY 1980
107 Ca 3d 387 165 CAL RPTR 715. WHEN A PARTY ASSERTS THE ATTORNEY-CLIENT
PRIVILEGE IT IS INCUMBENT UPON THE PARTY TO PROVE THE PRELIMINARY FACT THAT
A PRIVILEGE EXIST. [CITATION] ONCE THE FOUNDATION FACTS HAVE BEEN PRESENTED
I.E, THAT A COMMUNICATION IS PRESUMED TO HAVE BEEN MADE IN CONFIDENCE
AND THE OPPONENT OF THE CLAIM OF PRIVILEGE HAS A BURDEN OF PROOF TO ESTABLISH
THAT THE COMMENTATION WAS NOT CONFIDENT, OR THAT AN EXCEPTION EXIST. [CITATION]

PETITIONER Feels DEFENSE ATTORNEY MAY Have INTENTIALLY SENT INADVERTENT
STATEMENT TO THE D.A. HE NEVER READ OR CHECKED THE PACKET BEFORE SENDING IT OFF.
( ATTORNEY MALPRACTICE )

STATEMENT OF PERTINENT FACTS
PG 2 A

PETITIONER FURTHER ARGUES, THAT THE PROSECUTING ATTORNEY VIOLATED HIS OBLIGATION AS A STANDING OFFICIAL OF THE COURTS, AND A PRACTITIONER IN THE FIELD OF LAW, WHO IS CERTIFIED BY THE STATE BAR .. ONCE THE PROSECUTING ATTORNEY WAS HANDED CONFIDENTIAL DOCUMENTS BY PETITIONERS DEFENSE ATTORNEY, AND WAS THEN SUBSEQUENTLY INSTRUCTED BY PETITIONERS DEFENSE ATTORNEY TO RETURN THOSE CONFIDENTIAL DOCUMENTS BACK TO HIM, THE PROSECUTING ATTORNEY HAD A MORAL ETHICAL OBLIGATION TO RETURN THOSE CONFIDENTIAL DOCUMENTS BACK TO PETITIONERS DEFENSE ATTORNEY .. PROSECUTING ATTORNEY DID NOT DO SO [RT. TRANSCIPT PGS 894-900] SEE . MORROW V. SUPERIOR COURT, 36, CAL.RPTR.2D. 210 (1994) THE PROSECUTING ATTORNEYS ACTIONS ARE VIEWED AS, NOT ONLY UN-ETHICAL, BUT CRIMINAL AS WELL .. FOR AS LOGIC WOULD HAVE IT, WHEN YOU ARE IN POSSESSION OF SOMEBODY ELSES MATERIAL POSSESSIONS, AND THEY IN-STRUCT YOU TO RETURN THEM, [IN THIS CASE CONFIDENTIAL DOCUMENTS] AND YOU TAKE IT UPON YOURSELF, NOT TO DO SO, IN AMERICA THAT IS REFERRED TO AS "STEAL-ING" .. PETITIONER FURTHER ARGUES, THAT THE PROSECUTING ATTORNEYS UN-ETHICAL ACTIONS WERE UNDULY PREJUDICIAL, AS THE CONFIDENTIAL DOCUMENT THAT WAS THEN INTRODUCE AS EVIDENCE IN PETITIONERS TRIAL, PROVE TO BE THE "DAMAGING BLOW", WITH REGARDS TO PETITIONERS DEFEAT OF HIS CRIMINAL TRIAL PROCEEDING .. CONFIDENTIAL DOCUMENTS WERE MATERIALIZE THROUGH PETITIONER, AND THROUGH PETITIONERS DEFENSE ATTORNEY, THERE BY ESTABLISHING ATTORNEY CLIENT PRIVILEGE PROTOCOL IS A VIOLATION OF PETITIONERS U.S. CONSTITUTIONAL RIGHTS. SEE U.S.C.A. CONST. AMEND 5, 6, 14 ; CAL CONST. ART. 1, § 1, 7, 15; MORROW V. SUPERIOR COURT, 36 CAL RPTR. 2d 210 (1994) . THE EXPOSURE OF CORRUPTION IN GOVERNMENT, THE DEFENSE OF THE RIGHTS OF THE UNDERPRIVILEGED AND THE UNDER-REPRESENTED, AND VIGILANCE AGAINST EXCESSES OF MYRIAD KINDS BY BUSINESS AND INDUSTRY . BUT COMMON DECENCY DICTATES LIMITS TO THIS AGGRESSIVENESS, AND THEY INCLUDE A FUNDAMENTAL RESPECT FOR THE INDIVIDUAL RIGHTS TO PRIVACY .

## STATEMENT OF PERTINENT FACTS
### PG 3A

• PROSECUTION NEVER PROVED HE CONDUCTED HIS OWN INDEPENDENT INVESTIGATION OF MONICA WOODS POTENTIAL TESTIMONY WITHOUT REFERENCE TO THE INADVERTENTLY DELIVERY BY DEFENSE • STATEMENT WOODS MADE WAS IN CONFIDENCE AND IN THE COURSE OF THE LAWYER-CLIENT RELATIONSHIP • ONE WHO ASSERTS INEFFECTIVE RERRESENTATION BY COUNSEL MUST ESTABLISH BOTH THE OBJECTIVELY INADEQUATE PERFORMANCE OF THAT COUNSEL AND PREJUDICE • U.S. CA. CONST. AMEND 6, INSTEAD THE COURT FEELS DOYLE ERROR FITS SQUARELY INTO THE CATAGORY OF CONSTIT-IONAL VIOLATION WHICH WE HAVE CHARACTERIZED A "TRIAL ERROR" SEE ARIZONA V. FULMINATE, CHAPMAN V. STATE OF CALIFORNIA, IN RE WINSHIP • KOTTEAKOS V. UNITED STATES, UNITED V. LANE • • TRIAL ERROR "OCCURS DURING THE PRESENTATION OF THE CASE TO THE JURY • AND IS AMENDABLE TO HARM ful ERROR ANALYSIS BECAUSE IT "MAY... BE QUANTITIVELY ASSESSED IN THE CONTEXT OF OTHER EVIDENCE PRESENTED IN ORDER TO DETERMINE [THE EFFECT IT HAD ON THE TRIAL] ACTUAL PREJUDICE RESULTED AND IS ESTABLISH BY COUNSEL ERROR MADE SUBSTANTIALLY INFLUENCE THE JURY VERDICT • THE EXISTENCE OF SUCH DEFECTS - DEPRIVATION OF THE RIGHT TO COUNSEL, FOR EXAMPLE - REQUIRES AUTOMATIC REVERSAL OF THE CONVICTION BECAUSE THEY INFECT THE ENTIRE TRIAL PROCESS • [ERROR INFLUENCE THE JURY'S] DELIBERATION UNDER THE UNITED STATES," 28 U.S.C § 2254(A) ENTITLES HABEAS RELIEF • DE-NOVO REVIEW AND A MOST DEFINITE REQUIREMENT UNDER THE KOTTEAKOS ACT • CAUSE ERROR "WAS THE FRUIT AND WAS NOT INDEPENDENTLY GIVEN TO D.A DEFENSE ATTORNEY INCOMPETENCE NEGLIGENCE VIOLATED PETITIONER RIGHTS TO A FAIR TRIAL AND lAWYER ClIENT PRIVILEGE • INCOMPETENCE TRIAL COUNSEL RESULTED TO PETITIONER CONVICTION UNFAIR PROCEEDING OR UNRELIABLE VERDICT • DEFENSE PREJUDICE HIS CLIENT BY POOR REPRESENTATION • A MISCARRIAGE OF JUST-ICE OCCURED AS A RESULT OF THE PROCEEDINGS LEADING TO THE CONVICTION OR SENTENCING • DEFICIENT AT ITS FINEST • CURSORY REPRESENTATION BY DEFENSE ATTORNEY •

Strickland V. Washington

STATEMENT OF PERTINENT FACTS
PG 4A

DEFENSE ATTORNEY DIDN'T FILE A "CONFLICT OF ENTEREST" ENTIL AFTER
HE COMMITTED PREJUDICE ERROR BY SENDING THE WRONG STATEMENT TO THE
D.A A INCRIMINATING STATEMENT WHICH INFLUENCE THE JURY VERDICT
OR DECISION. TRANSCRIPTS PGS 1147-1148 YOU WILL SEE JURY WAS DEADLOCK
ENTIL THEY WAS PUSH & PRESSURE BY BIAS JUDGE HARRY SHEPPERD PUSH THEM IN THE
DIRECTION OF THIS STATEMENT. IT SAYS IN UNITED STATES V. SEE CITE AS 505
F. 2D 845 (1974) JURY INDICATES THAT IT CANNOT REACH A VERDICT, THE TRIAL JUDGE
SHOULD QUESTION THE JURY, EITHER INDIVIDUALLY OR THROUGH ITS FOREMAN, ON THE POSS-
IBILITY THAT ITS CURRENT DEADLOCK COULD BE OVERCOME BY FUTURE DELIBERATION. IDENT-
IFICATION WHERE TRIAL TOOK THREE AND ONE-HALF DAYS, JURY INDICATED THAT
IT WAS DEADLOCK AFTER TEN HOURS OF DELIBERATION WHICH HAD OCCURED OVER THE COURSE
OF TWO DAYS, TRIAL COURT CALLED JURORS INTO OPEN COURT AND QUESTIONED FORE-
MAN AND THE MEMBERS AS TO WHETHER THERE WAS ANY POSSIBILITY A VERDICT COULD
BE REACHED, ALL REPLIES WERE NEGATIVE EVEN BEREADING OF STATEMENTS FOREMAN STILL
SAID NEGATIVE. TRIAL COURT BELIEVED THAT ANY ADDITIONAL ACTIONS ON ITS PART,
SUCH AS GIVING ALLEN CHARGE WOULD PUSH THE JURY TO A DECISION WHICH WOULD
BE INAPPROPIATE LIKE PETITIONER CASE DECISION WAS INAPPROPIATE. NOTES READ
THE SAME OR VERY SIMULAR IN PETITIONER CASE. THE JURY HAD NOT BEEN ABLE TO AGREE AND THAT
THERE WAS NO LIKELIHOOD OF THEIR AGREEMENT IF THEY WERE KEPT OUT LONGER.
JUDGE HARRY SHEPPERD EXERCISE OF IT DISCRETION WAS INPROPER BIAS AND PREJUDICE.
JUROR #3. THE JURY RETIRED TO DELIBERATE IN PETITIONER CASE AROUND 11:00
A.M ON TUESDAY 4/28/99. ON APRIL 29th IN THE AFTERNOON, THEY SENT A NOTE
TO THE JUDGE ASKING ABOUT WHAT IS THE PROCEDURE IF THEY COULD NOT
REACH A UNANIMOUS VOTE. HE INFORMED THEM THAT IT HAD BEEN A LONG TRIAL,
AND THAT THEY SHOULD CONTINUE TO DELIBERATE TRANSCRIPT PGS 1147. "INSTRUCTION
WAS UNLEFT UNANSWERED HE NEVER ANSWERED THE JUROR'S WHEN JURORS REQUESTED
INSTRUCTIONS REGARDING THE PROCEDURES TO HOW THEY ARE TO FOLLOW IF NO UNANIMOUS

STATEMENT OF PERTINENT FACTS

PG 5A

DECISION REGARDING THE CHARGES CAN BE OBTAINED " PERIOD PARENTHESIS • POSSIBLE HUNG JURY • IN PETITIONER CASE TWICE THE JURORS SENT THE JUDGE A NOTE AND THAT THEY WERE UNABLE TO AGREE ON A VERDICT • JUDGE HARRY SHEPPERD RELIED SOLELY ON THE INADVERTENT STATEMENT THAT PETITIONER ATTORNEY TURNED OVER CARELESSLY TO THE D.A FOR A CONVICTION • SEE TRANSCRIPTS PGS 1147-1148 PROVES THEY CONVICTED PETITIONER BY THE INADVERTANT STATEMENT GIVEN TO THE D.A BY DEFENSE • JURORS WERE INFLUENCE BY STATEMENT AND CHANGE THEIR MINDS FROM A NOT GUILTY TO A GUILTY VERDICT ONLY BECAUSE OF THE STATEMENT AND OF NO OTHER EVIDENCE • JUDGE HARRY SHEPPERD MENTION ON PAGE 1553 IN TRANSCRIPTS AFTER THE FOREMAN SENT HIM A NOTE INDICATING TO THE COURT THAT THEY WERE NOT ABLE TO REACH AN UNANIMOUS DECISION • JUDGE HARRY SHEPPERD IF I WERE TO ASK YOU -- IF YOU -- IF YOU WERE TO CONTINUE TO DELIBERATE, IS THERE A REASONABLE PROBABILITY THAT YOU CAN ARRIVE AT A VERDICT? I'M ASKING YOU THAT THEY ALL SAID NEGATIVE, REGARDLESS THE JUDGE ALREADY HAD IN HIS MIND IF THE JURORS FELT THAT CONTINUING TO DELIBERATE OR FELT DELIBERATING CONTINUANCE WOULD STILL BE HOPELESS THE JUDGE IS BASICALLY SAYING ON TRANS-CRIPT PGS 1554 THAT THE JUDGE ALREADY HAD IN HIS MIND THEY WOULD CONTINUE TO DELIBERATE • (BIAS) THE "CRUCIAL FACTOR" IN DETERMINING THE PROBABILITY OF AGREE-MENT IS A STATEMENT FROM THE JURY THAT IT IS HOPELESSLY DEADLOCK." UNITED STATES V. LANSDOWN, 460 F. 2d 164, 170 (4th CIR 1972) • PETITIONER CONTENDS THAT IT WAS THE REVELATION OF THE INADVERTENT DELIVERY OF WOODS WHICH INADVERTENT DELIVERY WAS THE FINAL BLOW AND CHANGE JURORS MIND TO CONVICT PETITIONER AND BECAUSE OF INADVERTANCE IS THE SATISFACTORY EXPLANATION FOR COUNSEL DEFICIENCY REVERSAL OF PETITIONER CONVICTION IS WARRANTED • LOCKHART V. FRETWELL AND CRIMINAL LAW ⬦> 641.13(1)(5) THE TEST FORMULATED IN STRICKLAND FOR DETERMINING WHETHER COUNSEL HAS RENDERED CONSTITUTIONAL INEFFECTIVE ASSISTANCE REFLECTS THIS CONCERN • IN STRICKLAND, WE IDENTIFIED THE TWO COMPONENTS TO ANY INEFFECTIVE - ASSISTANCE CLAIM: DEFICIENT PERFORMANCE OR PREJUDICE • (BOTH EXIST)

STATEMENT OF PERTINENT FACTS

PG 6 A

UNDER OUR DECISION A CRIMINAL DEFENDANT ALLEGING PREJUDICE MUST SHOW "THAT COUNSEL'S ERROR WERE SO SERIOUS AS TO DEPRIVE THE DEFENDANT OF A FAIR TRIAL WHOSE RESULT IS RELIABLE." STRICKLAND 466 U.S at 687, 104 S.CT., AT 2064; SEE ALSO KIMMELMAN V. MORRISON, 477 U.S. 365 374, 106 S, CT 2574, 2582, 91 L.ED. 2D 305 (1986) (THE ESSENCE OF AN INEFFECTIVE-ASSISTANCE CLAIM IS THAT COUNSEL'S UNPROFESSIONAL ERRORS SO UPSET THE ADVERSARIAL BALANCE BE-TWEEN DEFENSE AND PROSECUTION THAT TRIAL WAS RENDERED UNFAIR AND THE VERDICT RENDERED SUSPECT • PETITIONER CONCEDES THAT COUNSEL PERFORMANCE WAS DEFICIENT • HE THEREFORE FOCUSES HIS ARGUMENT EXCLUSIVELY ON THE PREJUDICE COMPONENT • & PETITIONER SUFFERED LEGALLY NOTICEABLE COGNIZANCE PREJUDICE • IN SOME POINTS OR CASES, THE CIRCUMSTANCES SURROUNDING A DEFENDANT'S REPRESENTATION SO STRONGLY SUGGEST ABRIDGEMENT OF THE RIGHT TO EFFECTIVE ASSISTANCE THAT PREJUDICE IS PRESUMED • WHEN FOR INSTANCE, COUNSEL IS PREVENTED FROM OFFERING ASSISTANCE DURING A CRITICAL PHASE OF THE PROCEEDINGS, OR LABORS UNDER A CONFLICT OF INTEREST THAT AFFECTS HIS PERFOR-MANCE THEN WE ASSUME A BREAKDOWN IN THE ADVERSARIAL PROCESS THAT RENDERS THE RESULTING VERDICT UNRELIABLE • SEE UNITED STATES V. CRONIC, 466 U.S at 658-660, 104 S. CT, AT 2046-2047 • WE NEED NOT EVEN IF WE COULD, IN-QUIRE FURTHER INTO THE PRECISE NATURE OF THE PREJUDICE SUSTAINED,, SEE CLASSER V. UNITED STATES, 315 U.S 60 75-76, 62 S.CT 457, 467, 86 L.ED. 680 (1942) • IT IS ENOUGH THAT THE ADVERSARIAL TESTING ENVISIONED BY THE SIX AMENDMENT HAS BEEN THWARTED; THE RESULT IS CONSTITUTIONALLY UNACCEPTABLE AND A REVERSIBLE IS AUTOMATIC • SEE UNITED STATES V. CRONIC, 466 U.S AT 656-657, 104 S.CT AT 2045 2046; HOLLOWAY V. ARKANSAS, 435 U.S 475 489, 98 S.CT, 1173, 1181, 55 L.ED.2D 426 (1978) • THE JURY WAS MISLED REGARDING ITS SENTENCING RESPONSIBILITIES • IN RE BEGEROW(1901) 133 CAL 349, 353, 65 P. 828) AND IS REGARDED AS THE GREATEST REMEDY KNOWN TO THE LAW WHERE BY ONE UNLAWFULLY RESTRAINE OF HIS LIBERTY CAN SECURE HIS RELEASE • • • (MATTER OF FORD) 1911 160 CAL 334 340 116 P. 757]

*STATEMENT OF PERTINENT FACTS*

**PG 7A**

THE WRIT HAS BEEN AVAILABLE TO SECURE RELEASE FROM UNLAWFUL RESTRAINT SINCE FOUNDING OF THE STATE. UNITED STATES V. FEINBERG, 140 F. 2D 592, 594 AND CURLEY V. UNITED STATES, 81 U.S. APP. D.C 389, 392-393, 160 F. 2D 229 ~ 232, 233 ("IF "REASONABLE" JURORS *MUST* NECESSARILY HAVE .... A *REASONABLE* DOUBT" AS TO GUILT THE JUDGE MUST REQUIRE ACQUITTAL BECAUSE NO OTHER RESULT IS PERMISSIBLE WITHIN THE FIXED BOUNDS OF JURY CONSIDERATION") THIS IS NOW THE *PREVAILING CRITERION FOR* ~~STATUS~~ JUDGING MOTIONS FOR ACQUITTAL FEDERAL PRACTICE AND PROCEDURE ¶ 467 (1969 AND SUPP 1978)

FIRST, IT IS OUR ARGUMENT THAT THE PROSECUTOR IN PETITIONER CASE DID ENGAGE IN MISCONDUCT BY NOT ONLY CONTINUING TO READ A TRANSCRIPT THAT WAS OBVIOUSLY NOT INTENDED FOR HIM TO READ, BUT HE WENT OUT AND INTERVIEWED THE WITNESS, AS TO HER STATEMENT, WHICH HE KNEW HE SHOULD NOT BE IN POSSESSION OF. THE PROTECTION OF THE SIXTH AMENDMENT IS TO ENABLE A DEFENDANT TO BE ABLE TO SPEAK FREELY WITH HIS ATTORNEY. IF THE D.A IS ALLOWED TO USE MISS WOODS STATEMENT, A PETITIONER IS ONLY PROTECTED WHEN HE HAS AN ATTORNEY WHO NEVER MAKES A MISTAKE. UNFORTUNATELY, WE ARE ALL HUMAN, AND HUMANS MAKE MISTAKES. CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 473 IS A PROTECTION FOR CIVIL LITIGANTS TO CORRECT THE WRONG OR CORRECT AN ERROR, IF THEIR ATTORNEYS GET A JUDGEMENT OR A DISMISSAL, OR SOMETHING HAPPENS IN A PROCEEDING WHICH WAS INADVERTENTLY OR MISTAKENLY CAUSE. CLEARLY PETITIONERS LIBERTY FOR THE REST OF HIS LIFE IS AT STAKE, PETITIONER DESERVED GREATER PROTECTION, THAN SOMEONE SEEKING TO OBTAIN OR DEFEND AGAINST A MONEY JUDGEMENT. THERE CAN BE NO DOUBT THAT THERE HAS BEEN A DISCOVERY VIOLATION. THE PROSECUTION HAD NO INFORMATION REGARDING MISS WOODS UNTIL IT INCORRECTLY GOT IT FROM THE DEFENSE. IF THERE HAS BEEN A VIOLATION, THEN THE COURT MUST LOOK TO SEE IF THERE IS PREJUDICE. THE ATTORNEY'S DUTY OF LOYALTY TO THE CLIENT HAS BEEN BETRAYED. THE NEW DISCOVERY PROVISIONS DO NOT GIVE THE PROSECUTION FREE REIN OVER ALL DEFENSE FILES..

STATEMENT OF PERTINENT FACTS

PG 8 A

I HAVE THIS TO SAY REGARDING THE ATTORNEY'S DUTY OF LOYALTY TO THE CLIENT: ONE OF THE PRINCIPLE OBLIGATIONS WHICH BIND AN ATTORNEY IS FIDELITY, THE MAINTAINING INVIOLATE THE CONFIDENCE REPOSED IN HIM BY THOSE WHO EMPLOY HIM, AND AT EVERY PERIL TO HIMSELF TO PRESERVE THE SECRETS OF HIS CLIENT. [CITATION] THIS OBLIGATION IS A VERY, HIGH STRINGENT ~~STRINGENT~~ ONE. IT IS ALSO AN ATTORNEY'S DUTY TO PROTECT HIS CLIENT IN EVERY POSSIBLE WAY, AND IT IS A VIOLATION OF THAT DUTY FOR HIM TO ASSUME A POSITION ADVERSE OR ANTAGONISTIC TO HIS CLIENT WITHOUT THE LATTER'S FREE AND INTELLIGENT CONSENT GIVEN AFTER FULL KNOWLEDGE OF ALL FACTS AND CIRCUMSTANCES. [CITATION] BY VIRTUE OF THE RULE AN ATTORNEY IS PRECLUDED FROM ASSUMING ANY RELATION WHICH WOULD PREVENT HIM FROM DEVOTING HIS ENTIRE ENERGIES TO HIS CLIENT'S INTERESTS. NOR DOES IT MATTER THAT THE INTENTION AND MOTIVES OF THE ATTORNEY ARE HONEST. THE RULE IS DESIGNED NOT ALONE TO PREVENT THE DISHONEST PRACTITIONER FROM FRAUDULENT CONDUCT, BUT AS WELL TO PRECLUDE THE HONEST PRACTITIONER FROM PUTTING HIMSELF IN A POSITION WHERE HE MAY BE REQUIRED TO CHOOSE BETWEEN CONFLICTING DUTIES, OR BE LED TO ATTEMP TO RECONCILE CONFLICTING INTERESTS, RATHER THAN TO ENFORCE TO THEIR FULL EXTENT THE RIGHTS OF THE INTEREST WHICH HE SHOULD ALONE REPRESENT. BUT BY MY ATTORNEY AND HIS ASSISTANT INADVERTENCE, HE DIRECTLY AND IRRE- PARABLY HURT THE PETITIONER. WITH THE STATE OF THE PROSECUTION'S EVIDENCE AS SUMMARIZED ABOVE, THE COURT MUST CONCLUDE THAT TO ALLOW THE PROSE- CUTION TO INTRODUCE MISS. WOODS TESTIMONY, STATEMENT IS HIGHLY PREJUDICIAL. THE COURT IS WHO PETITIONER MUST LOOK TO, TO RIGHT THE WRONG DONE HIM, BY HIS ADVOCATE PROVES TO BE THE FRUIT AND CONTRIBUTE TO THE VERDICT. ERROR "HAD SUBSTANTIAL AND INJURIOUS EFFECT OR INFLUENCE IN DETERMINING THE JURYS VERDICT". STRONG JUSTIFICATION. VIEW IT THROUGH THE EYES OF THE ACTUAL FACT FINDERS. CHAPMAN V. STATE OF CALIFORNIA, 386 U.S. 18, 87 S.CT 824. ~~TIMMRECK~~ UNITED V TIMMRECK, 441, U.S. 780 183, 99 SC.T 2085, 2087, 60 L.ED.2D (1979)

STATEMENT OF PERTINENT FACTS

PG 9A

. THE ATTORNEY-CLIENT PRIVILEGE MAY BE WAIVED ONLY BY THE HOLDER OF THE PRIVILEGE .

. THE HOLDER OF THE PRIVILEGE IS THE CLIENT, NOT THE ATTORNEY. AND UNDER SECTION 954,

. THE LAWYER-CLIENT PRIVILEGE CAN BE ASSERTED TO PREVENT ANYONE FROM TESTIFYING

. TO A CONFIDENTIAL COMMUNICATION. THIS IS SO IN ORDER TO PROTECT CLIENTS FROM THE

. RISK OF ~~DISCLOSURE~~ BY EAVESDROPPERS AND OTHER WRONGFUL INTERCEPTORS OF

CONFIDENTIAL COMMUNICATIONS BETWEEN LAWYER AND CLIENT. IN OTHER WORDS, THE

SECTION PROTECTS AGAINST DISCLOSURE OF CONFIDENTIAL COMMUNICATIONS BY ANYONE WHO

OBTAINED KNOWLEDGE OF THE COMMUNICATION WITHOUT THE CLIENT'S CONSENT. HERE, IT

WAS THE ATTORNEY, NOT THE CLIENT, WHO TURNED OVER THE CONTESTED STATEMENT TO

THE PROSECUTOR. THE ATTORNEY DID SO WITHOUT THE CLIENTS AUTHORIZATION AND,

INDEED, HE DID NOT EVEN DO SO INTENTIONALLY, BUT RATHER INADVERTENTLY. IT

HAS BEEN HELD THAT THE ATTORNEY-CLIENT PRIVILEGE IS LOST IF THE CLIENT DIS-

CLOSES THE SUBSTANCE OF AN OTHERWISE PRIVILEGED COMMUNICATION TO A THIRD PARTY.

ON THE OTHER HAND, COURTS HAVE HELD THAT INADVERTENT DISCLOSURE BY COUNSEL

DOES NOT WAIVE THE PRIVILEGE. THE COURT OBSERVED THAT, IF INVOLUNTARY OR INAD-

VERTENT DISCLOSURES WERE HELD TO WAIVE THE PRIVILEGE, THE PRIVILEGE COULD BE

LOST AS THE PAPERS IN A CAR THAT IS STOLEN, OR IN A BRIEF CASE THAT IS LOST, OR IN

A LETTER FORM THAT IS MISDELIVERED, OR IN A FAX THAT IS MISSENT. LIKE IN

PETITIONERS CASE "THIS APPROACH TAKES FROM THE CLIENT THE ABILITY TO CONTROL WHEN

HIS OR HER PRIVILEGE IS WAIVED, AND IS INCONSISTENT WITH THE SUPREME COURTS

ADMONITION THAT THE COURTS SHOULD APPLY THE PRIVILEGE TO ENSURE A CLIENT REMAINS

FREE FROM APPREHENSION THE CONSULTATIONS WITH A LEGAL ADVISOR WILL BE DISCLOSED

SIMILARY, THE FEDERAL DISTRICT COURT HAS STATED IF WE ARE SERIOUS ABOUT ATTORNEY-

CLIENT PRIVILEGE AND THE CLIENT'S WELFARE, WE SHOULD REQUIRE MORE THAN ... NEGLIGENCE

BY COUNSEL BEFORE THE CLIENT CAN BE DEEMED TO HAVE GIVEN UP THE PRIVILEGE.

PETITIONER SUBMITS THAT THIS COURT SHOULD ADOPT THE RATIONALE STATED IN

MENDENHALL, BERG, AND HELMAN, AND HOLD THAT MR. McWILLIAMS INADVERTENT

STATEMENT OF PERTINENT FACTS

PG ~~10~~ 10 A

DELIVERY TO THE PROSECUTION OF MS. WOODS PRETRIAL INTERVIEW STATEMENT
DID WAIVE THE ATTORNEY-CLIENT PRIVILEGE. MR. MCWILLIAMS AND THE APP-
ROPIATE SOLUTION WAS TO BAR THE USE OF MS. WOODS PRETRIAL INTERVIEW STATEMENT
AS SHOWN IN THE TRANSCRIPT, AS WELL AS HER IN-COURT TESTIMONY, WHICH WAS THE
FRUIT AND THE PRODUCT OF THE PRETRIAL STATEMENT. PETITIONER SUBMITS THAT THE
ERROR HERE VIOLATED HIS RIGHTS UNDER THE FIFTH, SIXTH, THE FOURTEENTH AMENDMENTS
TO THE UNITED STATES CONSTITUTION. VIOLATION OF THE ATTORNEY-CLIENT PRIVILEGE
IS AN UNDUE BURDEN ON THE EXERCISE OF THE SIXTH AMENDMENT RIGHT TO COUNSEL.
MOREOVER, DISCLOSURE OF MS. WOODS STATEMENT INPLICATED PETITIONER'S
FIFTH AMENDMENT RIGHT AGAINST SELF INCRIMINATION. FINALLY, THE DISCLOSURE
OF WOODS STATEMENT "LIGHTENED THE PROSECUTION BURDEN OF PROOF, THERE
BY ABRIDGING PETITIONER'S RIGHT TO BE PRESUMED INNOCENT AND TO BE CONVICTED
ONLY UPON PROOF BEYOND A REASONABLE DOUBT. THEREFORE, THE APPROPRIATE TEST
FOR REVERSIBILITY OF THE ERROR IN PERMITTING THE PROSECUTION TO USE THE
STATEMENT AND TESTIMONY IS THAT OF THAT OF CHAPMAN VS. CALIFORNIA
THE CHAPMAN TEST WAS RECENTLY INTERPRETED BY THE HIGH COURT IN
YATES VS. EVATT AS REQUIRING A SHOWING, BEYOND A REASONABLE DOUBT, THAT
THE ERROR COMPLAINED OF "DID NOT CONTRIBUTE TO THE VERDICT OBTAINED."
FULL REVIEW WOULD PROVE IT DID AND IT ALSO PREJUDICE THE CASE, JURORS AND
THEIR MINDS AND VERDICT. TO MAKE THAT DETERMINATION, A REVIEWING COURT "MUST
TAKE TWO QUITE DISTINCT STEPS FIRST IT MUST ASK WHAT EVIDENCE THE JURY
ACTUALLY CONSIDERED IN REACHING IT'S VERDICT. TRANSCRIPT PG 1147-1148 IS YOUR PROOF
FINALLY, PETITIONER SUBMITS THAT THE REMEDY HE REQUESTED IN THE SUPERIOR
COURT WAS NOT AN UNREASONABLE ONE. DEFENSE ATTORNEY DID NOT ASK FOR AN ORDER
UNCONDITIONALLY BARRING THE PROSECUTION FROM USING MS. WOODS TESTIMONY,
RATHER, HE MERELY ~~ACTIONS~~ ASKED THE TRIAL COURT TO REQUIRE THE PROSECUTION
TO DEMONSTRATE, AS A PRECONDITION TO USING HER TESTIMONY, THAT IT HAD BEEN

STATEMENT OF PERTINENT FACTS
PG 11 A

OBTAINED INDEPENDENTLY OF THE INADVERTENT DISCLOSURE MADE BY MR. MC WILLIAMS.
CLEARLY, IF THE PROSECUTION WAS ALREADY AWARE OF MS. WOODS IDENTITY AND OF
THE DAMAGE HER TESTIMONY COULD DO TO THE DEFENSE, IT COULD HAVE CONDUCTED
ITS OWN INDEPENDENT INVESTIGATION OF HER POTENTIAL TESTIMONY WITHOUT
REFERENCE TO THE INADVERTENTLY GIVEN STATEMENT. IT SEEM CLEAR FROM
THE CIRCUMSTANCES, HOWEVER, THAT THE PROSECUTION WAS COMPLETELY UNAWARE
OF MS. WOODS UNTIL IT LEARNED OF HER STATEMENT THROUGH DEFENSE MR. MC —
WILLIAMS STATEMENT FROM THE DEFENSE ATTORNEY ON FRIDAY SEP 27, WHEN THE TRIAL
WAS SCHEDULED TO START MONDAY, SEP 30. [UNTIL THAT TIME, THE PROSECUTION
HAD NEVER ~~INTERVIEWED~~ OR ATTEMPTED TO CONTACT MS. WOODS ]. HOWEVER,
THE VERY NEXT DAY, AFTER RECEIVING THE ~~STATEMENT~~ AND READING THE ~~STATEMENT~~ DAMAGING ERROR
FROM DEFENSE ~~ATTORNEY STATEMENT~~, THE PROSECUTION CONTACTED MS. WOODS AND INTERVIEWED
HER. THE INFERENCE IS STRONG THAT, UNTIL RECEIVING THE TRANSCRIPT, THE
PRECUTION EITHER WAS UNAWARE OF MS. WOODS EXISTENCE, OR WAS UNAWARE
OF HER POTENTIAL TESTIMONY, OR BOTH. ACCORDINGLY, THE PROSECUTION DID
NOT OBTAIN MS. WOODS TESTIMONY INDEPENTLY OF THE STATEMENT OBTAINED
FROM. IN SHORT, IN APPLYING THE CHAPMAN TEST TO DETERMINE ~~WHETHER~~ WHETHER HER
NONSTRUCTURAL FEDERAL ERROR IS HARM~~LESS~~ FUL, THIS COURT MAY NOT SIMPLY
RE-WEIGH THE EVIDENCE TO CONCLUDE A HYPOTHETICAL REASONABLE JURY. IF
CORRECTLY INSTRUCTED, WOULD HAVE FOUND PETITIONER GUILTY. INSTEAD, THE
PERTINENT QUESTION IS WHETHER AN EXAMINATION OF THE RECORD IN THE CASE
INDICATES THAT PETITIONER'S JURY WOULD HAVE DONE SO. ALTHOUGH THE VICTIMS
OF THE FALSE IMPRISONMENT CHARGES EACH IDENTIFIED PETITIONER AS ONE OF THE GUN MEN,
EACH WAS ALSO A SELF LIAR ADMITTED LIARS, AND NONE OF THEM HAD KNOWN PETITIONER
BEFORE THE NIGHT OF THE SHOOTING. MS. WOODS ON THE OTHER HAND, AS PETITIONER'S GIRL-
FRIEND, WAS IN A COMPLETELY DIFFERENT POSTURE. COMING FROM HER, THE ASSERTION THAT PET-
TIONER HAD ADMITTED COMPLICITY IN THE CRIME WAS DEVASTATING TO PETITIONER'S DEFENSE
ACCORDINGLY REVERSAL IS REQUIRED

S U P P O R T I N G   F A C T :  STATED 2 - 5

The following facts are not particularly in dispute, as they are a matter of facts as have been testified to as so being by petitioner's dismissed trial counsel, Public Defender Mr. James McWilliams, and the endorsement of said facts by the Superior Court Magistrate in the instant criminal trial as being the evidence that substantiated said counsel's ineffective assistance, and consequential negligence that prompted the basis for counsel's self-initiated and subsequently ordered removal as petitioner's trial counsel. On September 27, 1996, petitioner was being represented by P.D. McWilliams in this instant action, with a trial date set for 9/30/00. On 9/27/00, while disclosing the transcribed statement of an alibi witness to D.A. Jeff Stark,

Counsel inadvertently disclosed a transcribed statement of a witness that the defense had interviewed, and had subsequently decided not to call to trial to testify. The facts that's been set forth in relative proceedings in this action clearly dictates that Defense Counsel McWilliams had intended to turn over one statement, that of Darren Collins, to the District Attorney and not that of Monica Woods, of which whose damaging transcribed interview is the topic of this issue at bar. Ms. Woods states in this controversial transcript that petitioner made an admission of complicity in the underlying homicide. D.A. Starks notified P.D. McWilliams that he had the statement. McWilliams urged Starks to return the statement of Monica Woods without incident, however, to no avail.

PAGE 2

CONTINUATION OF SUPPORTING FACTS:

On September 30, 1996, P.D. McWilliams  tried to motion the court to compel the D.A. not to pursue any investigation pending a full court hearing; this request was denied.

On February 18, 1997, the court denied the defense motion to exclude the witness Monica Woods, and refused to issue any protective order.  The issue was briefed and was summarily denied by the State Appellate Court, and the request for a rehearing in the California Supreme Court was summarily denied. Petitioner's counsel may be noted as having lost the document in question, but would ask this Court to take a judicial notice of it's file. Without issuance of an alternative writ or order to show cause, an order denying a petition for writ does **N O T** establish the law of the case, even if accompanied by a statement of reason (Kowis Vs. Howard (1992) 3 C.4th 888, 12 Cal. Rptr. 2d 728).

On August 8, 1997, in the Superior Court of Alameda County, Dept. No. 7, Public Defender James McWilliam filed a "DECLARATION OF CONFLICT OF INTEREST." Said declaration was granted, as the Judge at bar in said action found good cause pursuant to the order of removal rendered in relations hereto (SEE ATTACHED EXHIBIT "A"). As will be illustrated, petitioner incorporates several subdivisional grievances in this particular argument, and for the sake of

PAGE 3

CONTINUATION OF SUPPORTING FACTS:

clarity and to facilitate a comprehension of petitioner's legal posture, it would be well to proceed in the interest of such as follows. It is in part, petitioner's argument that D.A. unequivocally engaged in absolute prosecutoral misconduct of constitutional proportion by not only continuing to read a transcript that was obviously not intended for him to read, but he compoundingly advanced his over zealousness when he went out to interview Monica Woods as to the contents of her statement, of which he may only logically be presumed to know that he had no express permission from the defense, and therefore as a result of the present circumstances no legal authority to be in possession of.

The protection afforded to the accused via Article 1, § 15 of the California Constitution, and the Sixth Amendment of the United States Constitution, enables a defendant to speak freely with their attorney. Moreover, if the District Attorney in the instant case, given the suspect circumstances that gave rise to his unauthorized possession of said document, may be said to have a constitutional foundation upon which he is allowed to use the statement of Monica Woods, then it may be equally said with the same constitutional magnitude that a defendant is only protected when he has an attorney who never makes mistakes. Such a rhetorical proposition would never find the most remote support of our State and Federal Constitution, as it's legal endorsement would ridicule the efforts and intentions of it's Founding Fathers, and equally renders any presumed constitutional prophylactic against the ineffective assistance and sheer negligence of counsel meaningless. In light hereof, in

PAGE 4

### CONTINUATION OF SUPPORTING FACTS:

an adequate remedy whose compensation in no way punishes petitioner with the legally inconceivable admission of Monica Woods testimony in what could only be deemed an apropriate  constitutionally afforded retrial for the underlying homicide in the instant case, seeing that it's entry into trial was exclusively the sole results of petitioner's counsel's reckless negligence.  The removal of counsel remedy is quite logically insufficient, as it still in all provides petitioner with absolutely no relief of counsel's critically damaging error.

S U P P O R T I N G   F A C T S :  STATED 12-13

In the instant case, petitioner received a trial by jury. On April 29, 1998, subsequent to the jury's commenced deliberation of the instant case, the foreman of the jury submitted a note on behalf of the jury which read as follows: "We, the jury, request instructions regarding the procedures we are to follow if no unanimous decision regarding the charges can be obtained period, parenthesis. Possible hung jury, end parentheses [RT-1551-1552]." Petitioner would like to initially note that while the Judge did in fact respond to their inquiry with a conclusory opinion that the jury had not spent enough time in the deliberation of the instant case, however, he did not provide the most remote answer to their inquiry as to exactly and specifically what should they do in the event that they could not reach a unanimous verdict in the instant case. Consequently, the jury's question was left unanswered by the magistrate which unequivocally violated petitioner's right to a fair and impartial trial. This violation was both critically damaging and of constitutional magnitude, as it clearly failed to provide petitioner's jury with the entitled legal information they needed to reach the prospective verdict of which they inquired via the jury foreman.

Compoundingly, on April 30, 1998, the jury foreman, though on behalf of the he still hadn't received a both legal and constitutionally intelligent
Judge
response to the jury's inquiry of the process to be engaged in the event that they cannot reach a unanimous verdict, sent a note indicating to the Court that the jury could not reach a unanimous decision.

PAGE 12

To further lend both gravity and clarity to petitioner's issue at bar, it would be well to highlight the following chain of questioning employed by the magistrate. "COURT: ...If you were to continue to deliberate, is there a reasonable possibility that you can arrive at a verdict? I'm asking you that. THE FOREPERSON: No, I don't think so your Honor. THE COURT: Is there anything the Court can do to assist you in arriving at a verdict, such as rereading the jury instructions or read back of further testimony by the court reporter? THE FOREPERSON: I don't think so, your Honor."

While the judge indicated for the record that the foreman made some indications to the Bailiff that they desired to continue to deliberate, the judge equally made it clear that that would've been his decision in spite of the noted sentiments expressed to the Bailiff. This presentation of facts further substantiates the magistrates unconstitutional systematic denial of providing the jury in the instant case with the previously requested adequate procedure of how to render a 'hung jury' verdict in the instant case. In light of such, it is petitioner's contention that the court's failure to both realistically and constitutionally acknowledge the jury's dilemma of a prospective hung jury by providing them with the required legal information to facilitate such a decision violated petitioner's both State and Federal Constitutional right to the due process of law and a fair and impartial trial, consequently, rendering the verdict in the case at bar unconstitutional, thereby, mandating it's reversal in the interest of justice.

PAGE 13

894

1  Deborah L. Levy / State Bar #110995

2  405 14th Street / Suite 610

3  Oakland, CA. 94612

4  (510) 251-1850

5  Attorney for La France Beal

/ FILED
ALAMEDA COUNTY

MAR 27 1998

RONALD G. OVERHOLT, Exec. Off./Clerk
By _Nancy Regas_

6              IN AND FOR THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                         ALAMEDA COUNTY-HAYWARD

8  PEOPLE OF THE STATE OF CALIFORNIA)              NO. 123338

9                     Plaintiff,        )              NOTICE OF MOTION FOR

10  V.                                  )              PROTECTIVE ORDER OR

11  LA FRANCE  DAVID  BEAL              )              DISMISSAL

12  _____)

13  **THIS DOCUMENT AND ATTACHMENTS RELATE TO CONFIDENTIAL PROCEEDING**

14  **AND IS TO BE FILED UNDER SEAL**

15  **INTRODUCTION**

16      On August 25, 1994, Joe Spencer was shot and killed in the apartment of Alena Bell (I RT 19.)

17  Ms. Bell was living at 3510 Magnolia Street, with her children, her sister Sherry Thanars. Five adults

18  were present in the apartment, at about 10:00 or 11:00 p.m. when two armed men came in the

19  apartment (I RT 19-21.) Alena Bell and  Sherry Thanars were at home, as was a friend Erie

20  Robinson. Alena, her play cousin Feleshia Ross, and a next door neighbor, Cleveland Burgie were

21  playing dominos in the kitchen at the time (I RT 21-22.) The men stayed at the apartment about two

22  hours (I RT 22.)  According to Bell, Ross and Burgie, Mr. Beal was one of the two men in the

23  apartment (I RT 23; II RT 12, III RT 33.)  Upon entering the apartment, the men asked for "Joe,"

24  (I RT 24.) One of the men, identified as Beal by witness Bell, then went over to Sherry Thanars,

25  placed the gun at her head and stated: "You go with Joe," (I RT 26.) Ms. Bell testified that Sherry

26  responded,"she didn't go with Joe, that her and Joe go together no more" (Ibid.)  Sherry was told

27  to call Joe before everyone in the house was killed (Ibid.) Sherry paged Joe and then he called back

28  and Sherry was told to tell Joe "whatever it takes to get him there." (Ibid.)  Joe arrived, and was shot

- 3 -

1   many times (I RT 53.) Thanars did not testify at the preliminary hearing, all the others did. There is
2   no physical evidence directly connecting Mr. Beal to the murder, the prosecution's case rests on the
3   identification testimony of the above witnesses.

4       To summarize the testimony at prelim, on the evening of the shooting, witnesses Bell, Ross, and
5   Robinson had been drinking and smoking marijuana (I RT 63, 65, 89, 110; II RT 83, 144, III RT 74,)
6   and all the witnesses got together and decided to lie to the police about the events of that night (I
7   RT 93-95.) Ms. Bell gives a description of the suspect that differs from Mr. Beal (I RT 61, 68,123,
8   124, 146, 152.) Ms. Ross cannot remember what the suspect looked like(II RT 35-38,126.) Ms.
9   Robinson testified that Mr. Beal did not look like the suspect looked like (II RT174, 179-180, 188.)
10  Mr. Burgie, aged 23 at the time of the prelim, said he knew a, " La Fonz" who was a few grades
11  ahead of him, back in second or third grade, and identified Mr. Beal as that person, after he thought
12  that Father Paul had sent the police the correct photo(III RT 34,35.)

13  **THE INADVERTENT DISCLOSURE**

14      The following facts are not really in dispute. I have attached as Exhibit A, the original defense
15  motion for return of confidential document, exclusion of the use of the contents of such document
16  or its fruits...., which has  a full statement of the facts by James McWillimas, and has Judge
17  Goodman's original ruling. Exhibit B is the D.A.'s Opposition, with a declaration of Mr. Stark and
18  the transcript of the September 30, 1996 hearing.. I have also included as Exhibit C, the additional
19  findings by Judge Goodman.

20      On September 27, 1996, Mr. Beal was being represented by Public Defender James McWilliams,
21  in this same action, with trial set for 9/30/96. On 9/27, while disclosing the transcribed statement of
22  an alibi witness to D.A. Jeff Stark, Mr. McWilliams inadvertently turned over a transcribed statement
23  of a witness, that the defense had interviewed, and was not going to call at trial. The cover sheet
24  indicates that Mr. McWilliams intended to turn over one  statement, of one Darren Collins. Unknown
25  to Mr. McWilliams, the statement of Monica Woods was attached to the statement of Mr. Collins.
26  Ms. Woods states that Mr. Beal made an admission of complicity in the underlying homicide to her.
27  Mr. Starks notified Mr. McWilliams that he had the statement. Mr. McWilliams urged Mr. Stark to
28  turn over the statement, and to not proceed any further with any discussion or investigation of this

1   witness. On September 30, 1996, Mr. McWilliams tried to have the court order the D.A. to not

2   pursue any investigation pending a full court hearing, this request was denied. On Saturday 9/28/96,

3   Mr. Stark and his inspector interviewed Ms. Woods. On February 18, 1997, the court denied the

4   defense motion to exclude the witness Monica Woods, and refused to issue any protective order.

5       The issue was briefed and was summarily denied by the State Appellate Court (Exhibit D,) and

6   the request for rehearing in California Supreme Court, was summarily denied. Counsel has

7   inadvertently lost this document, but would ask the court to take judicial notice of its own file.

8   Without the issuance of an alternative writ or order to show cause, an order denying a petition for

9   writ does NOT establish the law of the case, even if accompanied by a statement of reasons, Kowis

10  V. Howard (1992) 3 C4th 888, 12 Cal Rptr.2d 728.

11      At some point, Mr. McWillimas declared a conflict and I was appointed attorney for Mr. Beal.

12  Here we are at the eve of trial, and the same issue arises again.

13      Counsel would incorporate every argument persuasively made in Exhibit A, and has a few to add.

14  Although the trial court focused on the lack of misconduct on the part of the District Attorney, there

15  is another important aspect to this case. First, it is our argument that the D.A. did engage in

16  misconduct by not only continuing to read a transcript that was obviously not intended for him to

17  read, but he went out and interviewed the witness, as to her statement, which he knew he should not

18  be in possession of. The protection of the Sixth Amendment is to enable a defendant to be able to

19  speak freely with his attorney. If the D.A. is allowed to use Monica's statement, a defendant is only

20  protected when he has an attorney who never makes a mistake. Unfortunately, we are all human, and

21  humans make mistakes. California Code of Civil Procedure section 473 is a protection for civil

22  litigants to correct an error, if their attorneys get a judgment or a dismissal, or something happens in

23  a proceeding which was inadvertently or mistakenly caused. Clearly when Mr. Beal's liberty for the

24  rest of his life is at stake, he deserves greater protection, than someone seeking to obtain or defend

25  against a money judgment.

26      In Flatt V. Superior Court, (1994) 9 Cal.4th 275, the court discusses conflicts that arise when an

27  attorney tries to represent one party and then on behalf of another client, sues the first client.

28      "The mandatory rule of disqualification in cases of dual representations involving unrelated

- 5 -

1   matters-analogous to the biblical injunction against "serving two masters" (Matthew 6:24)-is such a

2   self-evident one that there are few published appellate decisions elaborating on it. There are, however,

3   a handful of opinions that leave no doubt as to the rule and its operation. In one of the earliest of the

4   modern cases, Grievance Committee (1964) 152 Conn. 59 [203 A.2d 82], a law firm was retained

5   by one Twible to represent him as a plaintiff in a collection matter. Although the firm neither charged

6   the client a fee nor took a retainer (Twible failed to sign some necessary papers), it did file

7   proceedings against the debtor on his behalf. While that suit was pending, another partner in the same

8   firm agreed to file suit against Twible and to attach his house on behalf of a new client in a wholly

9   unrelated matter.

10          When disciplinary proceedings were commenced against the attorneys and their firm on

11   Twible's complaint, they defended on the ground that the two suits had 'nothing in common' and thus

12   did not create a conflict of interest. Concluding that 'a firm may not accept any action against a

13   person whom they are presently representing even though there is no relationship between the two

14   cases,' the Connecticut Supreme Court held that the attorneys had violated an ethical obligation even

15   if there was no conflict: 'When a client engages the services of a lawyer in a given piece of business

16   he is entitled to feel that, until that business is finally disposed of in some manner, he has the

17   undivided loyalty of the one upon whom he looks as his advocate and his champion. If, as in this case,

18   he is sued and his home attached by his own attorney, who is representing him in another matter, all

19   feeling of loyalty is necessarily destroyed ....' (203 A.2d at p. 84.)" at p. 268

20       Although not exactly on point, clearly Mr. Beal has the same lofty expectations of his advocate

21   and champion. Mr. Beal may or may not have an action against Mr. McWilliams, but the only way

22   to protect Mr. Beal from a terrible mistake by his attorney, is for the court to disallow the district

23   attorney from using the damaging statement.

24       The Flatt court, supra goes on to say,

25       "The reasoning of these cases, especially that of the Court of Appeal in Jeffry V. Pounds, 67

26   Cal.App.3d 6, evokes the original framework for {Page 9 Cal.4th 289} assessing an attorney's duty

27   of loyalty laid down by this court almost 65 years ago in Anderson V. Eaton (1930) 211 Cal. 113

28   [293 P. 788]. In that case, involving an attorney's dual representation of the plaintiffs in a wrongful



- 6 -

1   death action on behalf of their son's estate and of the insurance company representing the son's

2   employer in worker's compensation proceedings, we had this to say regarding the attorney's duty of

3   loyalty to the client: 'One of the principal obligations which bind an attorney is that of fidelity, the

4   maintaining inviolate the confidence reposed in him by those who employ him, and at every peril to

5   himself to preserve the secrets of his client. [Citations.] This obligation is a very high and stringent

6   one. It is also an attorney's duty to protect his client in every possible way, and it is a violation of that

7   duty for him to assume a position adverse or antagonistic to his client without the latter's free and

8   intelligent consent given after full knowledge of all the facts and circumstances. [Citation.] By virtue

9   of this rule an attorney is precluded from assuming any relation which would prevent him from

10  devoting his entire energies to his client's interests. Nor does it matter that the intention and motives

11  of the attorney are honest. The rule is designed not alone to prevent the dishonest practitioner from

12  fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position

13  where he may be required to choose between conflicting duties, or be led to attempt to reconcile

14  conflicting interests, rather than to enforce to their full extent the rights of the interest which he

15  should alone represent.' (Id. at p. 116, italics added.)" p.288-289.

16      Mr. McWilliams had no intention to hurt Mr. Beal or to disclose the statement or identity of Ms.

17  Woods, but by his inadvertence, he directly and irreparably hurt Mr. Beal. With the state of the

18  prosecution's evidence as summarized above, the court can only conclude that to allow the

19  prosecution to introduce Ms. Wood's statement is highly prejudicial. The court is who Mr. Beal must

20  look to, to right the wrong done him, by his advocate. The only fair and equitable course is to

21  prevent the D.A. from presenting Ms. Woods or her testimony, unless the prosecution can prove, as

22  in the line of cases where there has been prosecutorial misconduct (see Exhibit A,) that any statement

23  used or any testimony from Ms. Woods was derived from a source independent of the inadvertent

24  disclosure. Otherwise, the prosecution has gotten the strongest evidence against the Mr. Beal from

25  the defendant's own mouth.

26      There can be no doubt that there has been a discovery violation. The prosecution had no

27  information regarding Ms. Woods until it incorrectly got it from the defense. If there has been a

28  violation, then the court must look to see if there is prejudice. In People V. Hunter, (1989) 49 Cal.

899

1    3d 957, 264 Cal. Rptr. 367, the court had erroneously ordered the defense to turn over c

2    investigation reports. The California Supreme Court found that the prosecution's use of these r

3    in trial was not prejudicial.  "Nothing in the defense reports discovered by the prosec

4    controverted this defense or appreciably aided the prosecution. Accordingly, any error in permi

5    such discovery was harmless beyond a reasonable doubt." at p.972

6       In People V. Wright, (1990), 52 Cal 3d 367, 276 Cal. Rptr. 731, the court ordered a defe

7    attorney during the guilt phase to turn over a Dr.'s report, which was a witness he was not sure

8    was going to call, and would only call in the penalty phase. Although the court found a discove

9    error, it found that the testimony of the Dr. and the questions that the prosecutor asked were NOT

10    prejudicial to the defense. That case was a matter of the discovery being turned over earlier than i

11    would have been. In **our** case, the material was never to be turned over.

12       The comment by Judge Goodman in his order, p.9, that the defense could avoid the prosecution

13    from using such harmful statements by turning them over to the D.A. is ludicrous. In this situation,

14    the obvious and simple thing for the defense to do with the harmful statement was nothing. The

15    witness was unknown to the prosecution. It is especially ludicrous in this case with an attorney with

16    the long standing, excellent reputation that Mr. McWilliams enjoys. The order also claims, p.2, that

17    the turning over of Ms. Woods' statement was NOT protected as attorney-client communications.

18    It most clearly was. Mr. McWilliams received the name of Monica Woods from his client. He

19    released the information only to his investigator, which is all protected by the attorney client privilege.

20    It is interesting that in footnote 18 in People V. Stanley (1995) 10 Cal. 4th 764, the defendant argued

21    that rather than appoint a second defense attorney for a 1368 hearing, the prosecution could have

22    adequately presented the case for defendant's **competence**. The court found that defendant ignored

23    the practical and constitutional impediments to defendant cooperating with the prosecutor on this

24    issue (e.g., the attorney-client privilege and the Fifth Amendment). "Only someone in a confidential

25    attorney-client relationship with defendant would be able to present evidence or cross-examine

26    witnesses based on knowledge gained from defendant himself." Ibid fn.18. May I add even finding

27    witnesses starts with the defendant himself. Without the attorney- client privilege, the defendant

28    would be at risk even telling his lawyer about any witnesses.

900

1        Wherefore, the court must prohibit the prosecution from using Monica Woods as a

*witness*

2    or any references to her, or her statement, without first showing that it was obtained indepe

*independently*

3    of the defense error

4

5

6    Dated: March 26, 1998

7

8

9    Respectfully Submitted,

10

11

12

13

14

15    Deborah L. Levy, Attorney for Mr. Beal

16

17

18

19

20

21

22

23

24

25

26

27

28

*Another pg like this included Readable.*

1147

1  DEBORAH L. LEVY

2  405 14TH STREET/ SUITE 610

3  Oakland, CA 94612

4  (510) 251-1850

5  ATTORNEY FOR BEAL

6

7  IN AND FOR THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

8  COUNTY OF ALAMEDA- HAYWARD JUDICIAL DISTRICT

9

10  PEOPLE OF THE STATE OF CALIFORNIA)                    NO. 123338

11                     Plaintiff, )

12                              )                         JUROR AFFIDAVIT

13  LA FRANCE BEAL            )

14                     Defendant,)

15

16  I, Roderick Lawson hereby swear and affirm that the following is true and correct. I was a juror

17  in the above entitled action. I was juror #3. The jury retired to deliberate around 11:00 a.m. on

18  Tuesday, 4/28/98. On April 29, in the afternoon, we sent a note to the judge asking about what is

19  the procedure if we could not reach a unanimous vote. He informed us that it had been a long

20  trial, and that we should continue to deliberate. On April 30, in the afternoon we sent in a note

21  that we were unable to agree on a verdict. The judge called us in and the foreman told him that

22  we were divided 7-5. The judge called the lawyers into the back. When he returned, the foreman

23  indicated that there may be some movement in the jury. We returned to deliberate. Friday, May

24  1st, around 2:00 p.m., we had reached a unanimous guilty verdict.

25  I was a not guilty vote from the start. The prosecution witnesses were not very credible.

26  Cleveland Burgie was not credible at all. The other 4 ladies were real shakey. There were a lot of

27  holes. They lied about stupid things, like both sisters throwing two dollars down to their mother.

28  There was a female juror who also voted not guilty and she and I were the last ones to change

1148

1  her testimony read back. It was clear she cared for the defendant. She could only kn

*know about* 2  the offense from the defendant. She described how the house was, and how they ran c

*down* 3  **the steps.** *Error 1st Attorney mr. mcwilliams made contribute to my conviction-*

*tion* 4  *and swayed the jurys decision. Error changed verdict From not guilty 1*

*to* 5  *guilty .*

6

7

8  I swear and affirm that the above is true and correct, except for those matters asserted und

9  information and belief, and as to those matters, I believe them to be true.

10

11  Executed on this  17TH  day of June, 1998, in the city of  OAKLAND , California,

12  county of  ALAMEDA .

13

14  *Roderick A. Lawson* (signature)

15  Roderick Lawson

16

17

18

19

20

21

22

23

24

25

26

27

28

1    April 29, 1998

2                    PROCEEDINGS

3            THE COURT:  We're back on the record in the

4    matter People versus Beal.  All jurors are present, proper

5    seated.  Both counsel are present, defendant is present,

the  6    alternate jurors are not present.

7            Good afternoon, ladies and gentlemen.

8    Mr. Foreman, I received your note which read as follows:
                        *lost time see pg 1147*
9    We, the jury, request instructions regarding the procedures

10   we are to follow if no unanimous decision regarding the

11   charges can be obtained period, parenthesis.  Possible hung

12   jury, end parenthesis.  My remarks to you are as follows:

13   You listened to approximately three weeks of testimony, you

14   deliberated for a very short time yesterday morning, which

15   was probably no more than an hour yesterday morning.  And

16   yesterday afternoon, which was for approximately three or

17   three and a half hours. and then this morning and then for

18   about an hour and a half this afternoon.  So the period of

19   time that you've had to deliberate in this case when

20   compared to the three weeks of testimony that you received

21   is not inordinate.  So I'm going to ask that you continue to

22   deliberate on the case for the remainder of the day until

23   the time you decide to retire for this evening.  And then

24   come into tomorrow and continue to deliberate.  If the

25   situation does not improve and I don't know where you stand,

26   I'm not going to ask that question now, but if the situation

27   doesn't improve after more deliberations let me know by

28   another written inquiry or message.  My point is that you

*He never answered the foreperson's jury question on pg 1554*

*Bias he states the Judge he already made up his mind no matter what he was gonna make the ultimate decision to deliberate - Jury misconduct - Depriving me of a fair trial*

1551

1    haven't really spent, when you consider the volume of the

2    evidence and testimony that you received, you haven't really

3    spent an inordinate period of time deliberating.  So please

4    return to the jury room and continue your deliberations.

5    Come back tomorrow at 9:00 o'clock.  Again, continue and let

6    me know how you're proceeding, if you find that necessary.

7    All right.  Thank you, Mr. Foreman.

8                     All right.  We're in recess.

9                          (Whereupon the proceedings

10                           were adjourned.)

11                               --oOo--

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

X Here

1    April 30, 1998
2                    PROCEEDINGS
3          THE COURT:  We're back on the record of People
4    versus Beal.  Both counsel and defendant are present and the
5    jury are present and properly seated.
6          1st Mr. Foreperson, you sent a note indicating to the
7    Court that you are not able to reach an unanimous decision.
8    If I were to ask you -- if you -- if you were to continue to
9    deliberate, is there a reasonable probability that you can
10   arrive at a verdict?  I'm asking that to you.
11         THE FOREPERSON:  No, I don't think so, your
12   Honor.  2nd
13         THE COURT:  Is there anything the Court can do to
14   assist you in arriving at a verdict, such as rereading the
15   jury instructions or read back of further testimony by the
16   court reporter?
17         THE FOREPERSON:  No, I don't think so, your
18   Honor.
19         THE COURT:  How many ballots have you taken?
20         THE FOREPERSON:  Three ballots.
21         THE COURT:  Now, listen carefully to the next
22   question, Mr. Foreperson.  I don't want to know which way
23   the vote is, I want to know the numerical count only.  7-5,
24   6-6 something like that.  I don't want to know which way.
25   Okay.  What was the numerical breakdown on the last ballot?
26         THE FOREPERSON:  7-5.
27         THE COURT:  You remember the numerical breakdown
28   on the ballot before that?

They pressure the foreman to change his
decision and convict me. The Judge    1553

1          THE FOREPERSON:  7-5.

2          THE COURT:  On, the first ballot?

3          THE FOREPERSON:  I think 6-6-.  It was a split.

4          THE COURT:  All right.  Please remain seated for

5    a few minutes, I want to discuss this matter with counsel

6    and I'll discuss it with counsel, so just remain seated.

7                    (Recess taken.)

8          THE COURT:  We're back on the record.  Ladies and

9    gentlemen, I was discussing this matter with counsel in

10   chambers.  The bailiff indicated that the foreperson

11   communicated to him that you would desire to continue

12   deliberations.  I'll make this remark to you, that was going

13   to be my judgment anyway.  There's nothing easy about jury

14   deliberations, it's a matter that's rarely commented on any

15   place.  It's not an easy task, essential task.  The

16   testimony in this case was approximately 3 weeks.  You've

17   been at that time for two and a half days.

18          Again, I'll repeat myself.  As I said yesterday,

19   that in and of itself is not an inordinate period of time.

20   I recognize there has been little movement apparently.  On

21   the other hand, two half days in a very serious case such as

22   this is not an inordinate period of time to deliberate. Bias

23          I'm going to recess you for tonight.  You're

24   ordered to return tomorrow at 9:00 o'clock to continue your

25   deliberations.  Have a good evening.

26                    --o0o--

27

28

1554

Supporting case

continuation pg supporting Ineffective Assistance claim Ground

1    case # Stevens v. Del. corr. ctr, 152 F. Supp 2d 561
2    (D. Del, 2001) Also is simular to Petitioner case.
3
4    The state raises Two Arguments on appeal:
5      (1) That the ineffective Assistance claim upon which the District
     court granted Federal habeas relief was unexhausted and is thus
6    procedurally barred, and (2) in the alternative, that the state
7    courts' application of strickland v. Washington, 466 u.s. 668(1984),
8    was not objectively unreasonable under 28 u.s.c. § 2254(d)
9    2001.
10   The "clearly established Federal Law" applicable to ~~Beal~~ Beal 'claims
11   of ineffective assistance of counsel is the familiar Two-pronged
     test the court articulated in strickland v. Washington, 466 u.s. 668
12   (1984). Under strickland Beal must establish that mr. mcwilliams perfor-
13   mance was constitutionally deficient by showing that his repre-
14   sentation "Fell Below and objective standard of reasonableness which
     petition shows. "strickland, 466 u.s. at 688. Second Beal must show
15   that there is a reasonable probability" that mr. mcwilliam petitioner
16   attorney deficient performance prejudiced his defense to the
17   that counsel's mistakes and/or omissions may well have affected
18   the outcome of the case against him. specific errors are ident-
19   ified by petitioner in petition by petitioner counsel. The court
20   of Appeal must indulge a strong presumption that counsel's
21   conduct was reasonable. Strickland. 466 u.s. at 690
22
23
24              Cont   Ground 1: A   I.A.C
25
26
27
28

RT PAPER
OF CALIFORNIA
113 (REV. 8-72)

EXHIBITS B

HEREIN POINTS / AUTHORITIES
Supporting CASES: Pgs 6-10, 14, cont pg

<u>MEMORANDUM OF POINTS AND AUTHORITIES:</u> B supporting case

The following points and authorities will address the current law of the attorney-client relationship and privilege, how the law of prosecutorial discovery applies to and the issue of whether third-party statements are also protected.

In summary, the case law that has addressed the prosecution's acquisition of confidential defense material-whether from the defendant or other material not directly within the attorney-client privilege, and whether obtained by an intentional act or inadvertence, have either ordered the case dismissed, or found that the trial court has isolated the material from the trial such that no use of it occur at trial. No case was found that permitted the use of defense confidential materials coming within the possession of the prosecution.

THE RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL INCLUDES INVESTIGATION OF WITNESSES AND OTHER MATERIALS. In People v. Benally (1989) Cal. App. 3d 900, the appellate court was urged to dismiss a criminal conviction because the state had acquired confidential information from the defense.

In this case police had <u>unintentionally</u> taped a conversation between the defense attorney and the defense attorney's investigator while they were viewing the evidence collected at the police department. Although no attorney-client conversations were revealed, the court did not find this defeated the motion on whether the prosecution had gained "unfair advantage." However, in Benally,

PAGE 6

the trial court had ordered the tape sealed, directed the detective who had heard the tape not to discuss its contents, and ordered that to any question the defense raised an objection, the prosecution would be required to show that the information or evidence was derived form a source other than the tape. In Benally, although one prosecution was aware of the existence of the tape, that prosecutor never listen to the tape, and was only advised of a small portion of its contents, involving the defense attorney's description of that prosecutor. The trial prosecutor never was told about the existence of the tape. The Benally court acknowledge the law that dismissal could be appropriate only if there was a showing of prejudice or the substantial threat of prejudice.

In People v. Garewal (1985) 173 Cal.App. 3d 285, the appellate court was urged to dismiss a criminal conviction because the state had acquired confidential information from the defense. In this case, the prosecution had been initiated in Imperial County, but was moved to Orange County. Incident to which an Imperial County Deputy District Attorney offered to transport the defense files to the Orange County Public Defender. In doing so he reviewed the files, purportedly to assure complete discovery, and inadvertently read a portion of a transcript of a defense investigator's incriminating interview of defendant.

Material outside the direct conversation exchange between an attorney and a client was found confidential and within the client's Sixth Amendment right to the effective assistance of counsel in other cases.

PAGE 7

In People v. Merdith (1981) 29 Cal.3d 682, the appellate court considered whether the California attorney-client privilege extended to investigation by the attorney and the attorney's investigator involving observations of the crime scene. The court found that such observations were confidential.

The Sullivan court (State v. Sullivan (1962) 60 Wn.2d 214) stated a general rule which supports the result we reach here that attorney-client communications remain privileged "regardless of the manner in which it is sought to put the communications in evidence, whether by direct examination, cross-examination, or indirectly as by bringing of facts brought to knowledge soley by reason of a confidential communication."(P. 476, quoting 58 Am. Jur., Witnesses, §466.) (Italics by the Sullivan court.) (emphasis added) Id. at fn. 4.

In Gebe Compton's Corp. v. Superior Court of San Francisco (1962) Cal.App. 2d 365, the court held that statements of witnesses taken by an insurance carrier and transfer to an attorney are protected within the attorney-client privilege and consequently immune from discovery and inspection of civil discovery rules.

Proposition 115 added both constitutional and statutory language authorizing reciprocal discovery in criminal cases. Section 30, subdivision (c), was added to article I of the California Constitution (article I, section 30 (c) by Proposition 115, declaring discovery to be "reciprocal" in criminal cases, and added a new discovery chapter.

PAGE 8

Article I, section 30 (c) constitutes a specific exception to the broad privilege against self-incrimination set forth in article I, section 15 of the California Constitution. The procedure is designed to "accelerate" disclosure of <u>witnesses that the defense intends to call at trial</u>, where such disclosure would otherwise occur. The identity of damaging witnesses that the defense does not intent to call at trial need be disclosed, and thus remains confidential and not subject to discovery by the prosecution.

Thus, there is nothing in the new discovery chapter that would penalize exhaustive investigation or otherwise chill trial preparation of defense counsel such that criminal defendants would be denied the right to the effective assistance of counsel under Article I, section 15 of the California Constitution and the Sixth Amendment of the United States Constitution.

Here there is a violation of both state and federal constitutional rights of petitioner, by looking to the investigation of the defense to use against the client, and thus, "lighten the burden of proof" required by the state by using the client's confidential materials against him.

In closing, petitioner might add that Evidence Code §919 declares erroneously disclosure of privileged material "inadmissible against the holder of the privilege.

Petitioner prays for the relief of the criminal conviction in this instant case, as it was unequivocally secured exclusively via the tainted fruits born out of the violation of petitioner's State and federal Constitutional right

PAGE 9

to the effective assistance of counsel. This fact may be convincingly established via the Juror Affidavit, marked "Exhibit B," herein.

///

///

///

///

///

M E M O R A N D U M   O F   P O I N T S   A N D   A U T H O R I T I E S :

The Trial Court's failure to declare mistrial was unconstitutional, because it failed to provide the jury with adequate instructions how to do so and after the foreman in the instant case bringing it to his attention.

Trial Court's refusal to declare mistrial proper when not clear that the jury was deadlocked because the jury had deliberated less than two days (113 S. Ct. 262; U.S. V. Green, 962 F.2d 938.

Trial Court's refusal to declare mistrial proper despite divided jury because jury did not indicate further deliberations would be fruitless but rather asked judge to clarify earlier instructions (U.S. V. Hotz, 620.2d 5, 6-7). In the instant case at bar, the foreman made it clear to the judge that the jury was unable to reach a unanimous verdict and that there was no further information that they could be provided to aid them in rendering a different verdict.

In light of the foredisclosed facts outlined herein, there can be no doubt that the magistrate in the case at bar committed such error of constitutional magnitude requiring reversal of the instant conviction. The court's failure to provide the jury with it's specifically requested remedy in the event that they could not reach a verdict compounded the committed error. Petitioner prays for relief of the conviction at bar.

1, Strickland V. Washington, 466 U.S. 668, 80 L.Ed.2d 674 104 S.ct. 2052

2, Cuyler V. Sullivan, supra, 446 U.S., at 350, 348, 100 S.ct., at 1719, 1718

3, United States V. cronic, 446 U.S., at 659, and n.25, 104 S.ct., at 2047-2047, and 25.

4, Gideon V. Wainwright, 372 U.S. 335, 83 S.ct. 792, 9 L.Ed.2d 799 (1963)

5, Brecht, Doyle, Chapman, Kotteakos, Fulminate

6. United States V. lane, 474 U.S. 438, 449, 106 S.ct. 725, 732, 88 L.Ed.2d 814.

7. People V. Gainer, 19 cal.3d 835, 852, 566 P.2d 997, 1006 (1997)

8. Yates V. Evatt, (1991) 500 U.S. 391

9. Smith V. Groose, 205 F.3d 1045 C.A 8 (mo.) 2000

10. U.S. V. landsdown, 460 F.2d 164 (C.A.4Va.) 1972

11. United States V. Philips, 430 F.2d 949 (3cir 1970)

12. Boyette V. LeFevre, 246 F.3d 76 (2d cir. 2001)

13. United States V. Vozzella, 124 F.3d 463 (2d cir. 2001)

14. Blackburn V. Alabama, 361 U.S 1999, 206 (1960)

15. Culombe V. Connecticut, 367 U.S. 569, (1960)

16. Reck V. Pate, 367 U.S. 433, 440-444, 603-604 (1961)

17. Trapnell V. united States, 725 F.2d 149, (1961)

18. United States V. Emanuelle, 51 F.3d 1123, 151-152 (ca 2 1983), Knight V. State, 344 So.2d at 1001

19. United States V. Inigo, 925 F.2d 641, 656 127 (3d cir 1995) (3d cir 1991)

20. Foster V. California, 394 U.S 440, 895 S.ct. 1127, 22 L.Ed 2d 402 (1969)

21. Simmons V. U.S, 88 S.ct. 967, 390 U.S. 377 U.S III (1968)

22. Jones V. United, 362 U.S. 257 260-261,

23. Weeks V. united States, 232 U.S. 383, 34 S.ct. 341 58 L.Ed. 652

24. Mapp V. Ohio, 367 U.S. 643, 657, 81 S.ct. 1684, 1693, 6 L.Ed.2d 1081

25. People V. Dorman, 28 cal.2d 846, 172 P.2d 686

26. People V. Manchetti, CAl (1946)


Ground 1, B   Points and authorities   Supporting Case

Ground 2 #. (A. Supporting FACTS)
Nexts page

(A iSupporting FACTS)

" OPPOSITION TO MOTION TO QUASH
SUBPOENA " pg 1-2 EXHIBITS

(A . Support" , "Supporting FACTS )

"OPPOSITION TO MOTION TO QUASH SUBPOENA"

SEE Pgs 1-2

1   Deborah L. Levy State Bar #110995

2   405 14th Street/ Suite 610

3   Oakland, CA. 94612

4   (510) 251-1850

5   Attorney for Mr. LaFrance Beal

ENDORSED
FILED
ALAMEDA COUNTY

FEB 24 1998

RONALD G. OVERHOLT, Exec. Off./Clerk
By Gail Grey

6

7

8          IN AND FOR THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               COUNTY OF ALAMEDA-OAKLAND JUDICIAL DISTRICT

10

11  PEOPLE OF THE STATE OF CALIFORNIA)              NO. 123338

12              Plaintiff,          )          OPPOSITION TO MOTION TO

13  V.                              )          QUASH SUBPOENA

14  LAFRANCE BEAL                   )

15              Defendant,          )          Date: 3/10/98

16  _____ )          Time: 10:00 a.m.

17                                              Dept. 7

18      The attorney for the real party in interest in this matter, the Vallejo city attorney's office, has filed

19  a motion to quash the subpoena counsel issued.  The main argument is that the defense has not

20  provided sufficient reason to make "good cause" for disclosure. Defense has attached to this motion

21  an Oakland Tribune article dated 1/18/95, where an Oakland police officer states he is trying to

22  determine whether the Vallejo murders, the subject of this motion, and the Oakland murder, for which

23  Mr. Beal is facing trial are related. Defense does not have access to the Oakland police files, nor the

24  Vallejo reports, so can not provide any more information than what is included in this motion, and

25  the subject subpoena.

26      If the police believe that the murders were committed by the same person, then Mr. Beal is

27  obviously innocent, in that he was in custody when the Vallejo murders were committed. The court

28  must review the information in camera, in order to determine if there is any relevant evidence which

    should be disclosed to the defense. It appears that both parties are in agreement, that an camera

                                    - 1 -

1    review is warranted.

2

3     WHEREFORE, the court must review the requested materials.

4    Dated: 2/23/98

5

6    Respectfully Submitted,

7

8

9

10    _Deborah L. Levy_

11    Deborah L. Levy

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Attached Article

# Police suspect link between Oakland, Vallejo slayings

FROM STAFF REPORTS

VALLEJO — Detectives investigating the murders of two women last week said Tuesday there may be a link between those killings and the slaying of an Oakland man last August.

The man killed in Oakland was the brother of the boyfriend of one of the Vallejo victims, police said.

"We don't know for sure there is a connection, but we can't rule it out," Detective Dave Hoen said Tuesday.

Both women had a history of drug-related arrests, but police are not sure if that has anything to do with the killings.

Hoen also said the women killed last Friday — Rhonda Michelle "Mimi" Thompson, 27, and Donna Marie Benson, 39, also known as Donna White — both had previous addresses in Oakland and Berkeley.

Thompson's boyfriend was Larry Spencer, whose brother, Joseph Spencer, then 37, was shot to death Aug. 25 at his girlfriend's apartment on Magnolia Street in West Oakland.

Oakland Sgt. Bill Wallace said two men forced the woman to lure Joseph Spencer to the apartment. When he arrived the two men attacked him and demanded money and drugs. He fought with one of the men before he was killed.

Wallace said he is also trying to determine if the murders are related.

The women were each shot several times about 11 p.m. Friday in Thompson's apartment in the 400 block of Ohio Street, Hoen said Benson was visiting Thompson; both women had moved to Vallejo a few months ago. There was no sign of a forced entry, police said.

Anyone with information about the killings is asked to call Hoen at (707) 648-4514. Those wishing to remain anonymous may call Crimestoppers at (707) 644-STOP.

claim 2#    2B1-13

## Supporting Facts:

Petitioner contends on August 25th 1994, Joseph Spencer was shot to death in Oakland, California. Several months later, while petitioner was in custody charged with Spencer's murder, Michelle Thompson and Donna Benson were shot to death in Vallejo, California. Based on numerous apparent connections between that case and this case, Petitioner sought to subpoena the records of the Vallejo Police Department to aid him in showing that the murder of Spencer in this case had been committed by other persons -- the same persons that committed the Vallejo murders.

The Vallejo Police Department moved to quash the subpoena, alleging that petitioner had failed to show good cause for production of the documents and that the material requested was privileged under Code Section 1040 because it pertained to an ongoing investigation of the Vallejo crimes. The prosecution in this case supported the Vallejo police Department's motion to quash, and contended that there was insufficient evidence of third-party culpability to present to petitioner's jury.

(2 B1)

In response, petitioner argued that, at the least, the trial court should order the Vallejo Police Department records produced and review them in camera, to determine whether they contained facts or leads that would help him to investigate and, ultimately, establish his defense of third-party culpability. However, the motion to quash the subpoena was granted. Furthermore, the court ruled petitioner would not be permitted to raise a defense of third-party culpability based on the Vallejo killings, because he had failed to demonstrate sufficient similarity between the Vallejo case and this case.

Petitioner submits here that the courts ruling, granting the motion to quash without reviewing the Vallejo Police Department documents to       assess their materiality to his proffered line of defense, and thus essentially preventing him from presenting his defense that the crime was committed by other persons, was legally incorrect under California law. In addition, however, the courts erroneous ruling deprived him of his Federal Constitional rights, under the Fifth, Sixth, and Fourteenth Amendments, to due process of law, compulsory process and to present a defense.

[ Rights to offer evidence, including the testimony of witnesses, and to compel their attendance, if necessary, "is in plain terms the right to present a defense," and as such, is a fundamental element  of due process of law ]

(2B2)

Thus, enforcement of Petitioner's Subpoena duces tecum
would not have meant that he was entitled to unsuper-
vised access to the Vallejo police records, in the face
of a claim of confidentiality. As Stated by the court
of appeal in the purpose of the Subpoena duces tecum
in this context "is to initiate proceedings to have the
documents and other matters described in the Subpoena
brought before the court in the order that the court may
determine whether they are material evidence in the case
pending before it.

   Thus, the question is whether petitioner made a
Sufficient showing to entitle him to have the records
produced and reviewed by the trial court. Petitioner
Submits that the showing he made in Support of his
Subpoena duces tecum for the Vallejo Police Department
records of the Thompson and Benson murder cases was
amply Sufficient to meet this standard, and the records
should have been produced for the trial court's review.
In Support of his subpoena, Petitioner observed that
Vallejo police detectives had told the Oakland Tribune
that the two cases appeared to be linked. In an article
published a few days after the Vallejo Shooting, Vallejo
detectives were quoted as Saying that [we don't know
for sure there is a connection, but we can't rule it out.
Police noted that Victim Thompson's boyfriend was Larry
Spencer, the brother of Joseph Spencer, who was the Victim
in this case. Victims Thompson and Benson had both lived
in the Berkeley-Oakland area before moving to Vallejo, and
had Strong ties to the area.

[ acknowledging the constitutional right of a criminal defendant " to present all relevant evidence of significant probative value to the defense ]

As a general rule, an accused may have access to all evidence that can throw light on the issues in the case, provided it is admissible and not confidential. The proper test for determining whether production must be granted is whether there is good reason to believe that the information when produced would be admissible in evidence for some purpose.

under          california Penal code Section 1326, a criminal defendant is entitled to issue subpoenas, including subpoenas duces tecum, to require the production of documentary evidence in court upon a showing of good cause. The Supreme court stated that the requisite showing may be made " by general allegations which establish some cause for discovery other than 'a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime. If the defendant makes such a showing, and the government entity in charge of the records responds by claiming confidentiality or privilege under Evidence code Section 1040, the defendant is entitled to have the documents produced in court, so that they may be reviewed by the court in chambers and a determination may be made whether they are material to the defense, and whether their probative value to the defense outweighs the governmental entity's claim of confidentiality.

(2 B3) continues B3

### Simularities Facts : ↓↓ ↓↓

moreover, the Killings in both cases appeared to be drug-related, rather than robbery-related. In neither case was anything reported Stolen. In the Vallejo case, victim Thompson had cocaine in her System when she was Shot. Victim Benson's daughter told the Vallejo Times-Herald that she had moved out of her mother's house due to the drug trafficking that had been ongoing there in the months before her mothers death. According to the Vallejo TimesHerald both Vallejo victims had previously been arrested on drug-related offenses. Thompson had a prior arrest for drug sales, and Benson had a $20,000 warrant on her for a narcotics conviction. Larry Spencer, victim Thompson's boyfriend and the Brother of victim Joe Spencer in petitioner's case, also had a police record involving narcotics. Similarly, Joe Spencer had Two prior felony convictions for narcotics. In each case, one of the perpetrators was Seen Fleeing the Scene wearing a Black beanie cap. Furthermore, Thompson and Benson appeared to have been shot with bullets of the same caliber that Killed Joe Spencer in this case and, like Joe Spencer in this case, each of them was shot several times. Both Shootings took place in the hours around midnight. Description Height, weight, and color was Exact. Even weapons used same caliber

Petitioner's position Finds Support in there, the defendant requested police investigation reports on murders Similar to the murder with which he was charged. The court of Appeal in Alhambra emphasized that the defendant's showing must be evaluated in light of the legal Standard governing the admissibility of defense evidence of third-party Culpability: ~~Limited Mahamana~~

(2 B 4) continue B5

guilt. Based on this standard, the court of appeal found that the defendant's showing was sufficient, and production of the subpoenaed documents was appropriate. In upholding the defendant's right to subpoena the records, the court of appeal stated:

→ By parity of reasoning, Petitioner's showing was also sufficient in this case for, if anything, petitioner demonstrated more indicia of similarity than did the defendant in alhambra.

The motion to quash was based principally on the Vallejo police Department's assertion that the information in the documents was privileged under Evidence code Section 1040. In this regard, the Assembly committee comment the Evidence code Section 1040 states that, as long as no state or federal statute absolutely prohibits disclosure, the Judge "must determine in each instance the consequences to the public of disclosure and the consequences to the litigant of nondisclosure and then decide which outweighs the other. He should, of course, be aware of the public has an interest in seeing that Justice is done in the particular cause as well as an interest in the secrecy of the information." Here, the trial court did not reach this weighing process. Indeed, it did not even require the Vallejo Police Department to state the reason why confidentiality was needed in this particular case. Violation of Due Process.

refused to comply with the Subpoena, claiming
confidentiality. Without reviewing the records in
question, the trial court declined to enforce the
Subpoena.

Holding that the Fourteenth Amendment's due
process clause entitled the defendant "to know
whether the    CYS File contains information
that may have changed the outcome of his trial
had it been disclosed," the court concluded that the
appropriate remedy was to remand to the state
courts for the trial Judge to conduct an in camera
review of the records, and then to disclose the contents
of the files to the defendant to the extent they
were material to his defense, so that the defendant's
due process right to present his defense could be
protected.

⟶ Because the trial court in this case
did not require production of the Vallejo Police
Department records so that it could review them,
but instead summarily quashed petitioner's Subpoena
duces tecum, its ruling was error of constitution dimension
under Pennsylvania V. Ritchie, Supra, and must be
reversed. As stated by the court of appeal in
City of Alhambra V. Superior Court, Supra,

Because the documents enumerated in Petitioner's
Subpoena were never produced for the trial court's review,
"informed evaluation of these factors was not possible.
Accordingly, error was committed.

(206)

Furthermore, the error is not merely error of
California State law, but implicates Petitioner's right
under the Fifth, Sixth, and Fourteenth amendments to
the United States Constitution to due process of law,
compulsory process, and the rights to present a defense.
Petitioner sought the Vallejo documents in order to
further his investigation and presentation of the defense
that other persons committed the crime charged against
him. The viability of such a defense was reaffirmed
by our Supreme court in People v. Hall. The court
observed that it is "always proper to defend against
criminal charges by showing that a third person, not
the defendant, committed the crime charged" and held
that, to be admissible, the third-party evidence need
not to show "substantial proof of a probability" that
the third person committed the act; rather it need only
be capable of raising a reasonable doubt of defendant's
guilt. The court stated that trial courts, in
evaluating the admissibility of such evidence, Accordingly,
there can be no doubt that Petitioner's purpose in seeking
to uncover evidence pointing to the perpetrator or perpetrators
of the Vallejo offenses was a legally valid one, toward
presentation of a well-recognized line of defense. Because
the trial courts ruling frustrated this purpose, it
frustrated his right to due process of law and his
right to present a defense. As such, petitioner's case
is governed by Pennsylvania v. Ritchie, supra. In that
case, the defendant was charged with molesting his
daughter. He sought to discover the records of the child
protective services agency

(2 B 6) continue 2 B 6

→ Because the prosecution cannot demonstrate beyond a reasonable doubt that the error did not contribute to the verdict, reversal is required under Federal constitutional Standards. <u>Simularities is abundant</u>

On September 27, 1996, in preparation for trial, the Alameda County Public Defender delivered to deputy District Attorney John Starks a transcription of the tape recorded Statement of proposed defense Alibi witness Darren Collins. Unbeknownst to public Defender, the collins transcript had been combined with the transcribed Statement of Ms. woods, a witness who the Public Defender had interviewed, but whom it did not intend to call as a witness at the trial, because her Statements would incriminate petitioner. The collins transcript and the woods transcript had been prepared in Such a way that they appeared to be a Single document, with consecutive pagination. The entire document, containing both Statements, was delivered to Deputy District Attorney Stark. However, the delivery of the woods Statement was unintentional; Since the Public Defender did not intend to call Ms. woods as a witness at the trial, it did not intend to deliver a copy of her Statement to the prosecution. As Soon as the Public Defender discovered its mistake in delivering the woods Statement to the prosecution, the Public Defender requested that the prosecution return the Statement and not make any use of it against petitioner. The prosecution refused this request (petition for review, NO. SO61937, Filed June 6, 1997, at p. 4)

(2B7)

On September 30, 1996 the public Defender moved the trial court for a protective order and other appropriate relief, to obtain the return of the transcript of Ms. Woods' statement and to prevent the prosecution from using the statement or any fruits deriving from it at petitioner's trial. After receiving briefing from the parties, the trial court denied the motion. On February 18th, 1997 the court issued a written order setting forth its findings and its ruling. On April 10, 1997 the court issued a further order, affirming its earlier ruling after reconsideration.

Petitioner thereafter sought pretrial review of the trial court's order by filing a petition for writ of Mandate/Prohibition in this court. This court summarily denied the petition on may 29, 1997.

On August 8, 1997 the public Defender Filed a conflict of interest and withdrew from further representation of petitioner, and Ms. Deborah levy, was appointed to represent petitioner. Right after the inadvertance delivery of a incriminating statement my first Attorney his negligence was the final result of my verdict which was an fundamentally unfair proceeding or unreliable verdict error he made was the fruit ċ it influenced the Jury's decision. Monica statement was made in confidence in the course of the lawyer-client Relationship. New counsel renewed the motion to prohibit the prosecution from using monica woods statement, citing the fifth, Sixth, and fourteenth Amendments to the United States Constitution, Article I, Sections Seven, Fifteen, and twenty-four of the california Constitution, and the california Rules of professional conduct. Counsel Error were So Serious ċ deficient ċ prejudice.

On March 31, 1998 the court Denied the renewed motion, and ordered that both the live testimony and the previous statements of Ms. Woods could be used as evidence at Petitioner trial. (2B8)

At trial, ms. Woods acknowledged her pretrial statement that petitioner had confessed his guilt to her. However, she testified that the statement was untrue, and petitioner had not personally admitted complicity in the crimes to her. She said that her pretrial statement was based on what she heard from other people and what she read in the newspapers, and was not based on anything petitioner told her. The prior statement was then admitted into evidence as a prior inconsistent statement.

These facts pose the question whether the attorney-client privilege can be waived by mistake and inadvertence on the part of the attorney. Petitioner submits that to protect the purposes for which the attorney-client privilege was created, the answer to this question must be no.

The objective of the lawyer-client privilege is to enhance the value which society places on legal representation by assuring the client he or she may make full disclosure to the attorney unfettered by fear that others will be informed.

The basic policy behind the attorney-client privilege is to promote the relationship between attorney and client by safeguarding the confidential disclosures of the client and the advice given by the attorney. This policy supports a liberal construction in favor of the exercise of the privilege. Although the privilege may result in the suppression of relevant evidence, it is necessary to protect the client in making a full disclosure of the facts.

(289)

The attorney-client privilege may be waived only by the holder of the privilege. The holder of the privilege is the client, not the attorney. And, under Section 954, the lawyer-client privilege can be asserted to prevent anyone from testifying to a confidential communication. This is so in order to protect clients from the risk of disclosure by eavesdroppers and other wrongful interceptors of confidential communications between lawyer and client. In other words, the Section protects against disclosure of confidential communications by anyone who obtained knowledge of the communication without the client's consent.

   Here, it was the attorney, not the client, who turned over the contested Statement to the prosecutor. The Attorney did so without the clients authorization and, indeed, he did not even do so intentionally, but rather inadvertently. Prejudice occurred!

   It has been held that the attorney-client privilege is lost if the client discloses the Substance of an otherwise privileged communication to a third party.

   On the other hand, courts have held that inadvertent disclosure by counsel does not waive the privilege.

(2010)

The court observed that, if involutary or inadvertent disclosures were held to waive the privilege, the privilege could be lost as to papers in a car that is stolen, or in a Briefcase that is lost, or in a letter that is _misdelivered_, or in a fax that is missent. "This approach takes from the client the ability to control when his or her privilege is waived, and is inconsistent with the Supreme courts admonition that courts should apply the privilege to ensure a cliento remains free from apprehension that consultations with a legal adviser will be disclosed

Similary, the federal district court has stated if we are serious about attorney-client privilege and the client's welfare, we should require more than ... negligence by counsel before the client can be deemed to have given up the privilege

petitioner submits that this court should adopt the _rationale_ stated in Mendenhall, Berg, and helman, and  hold that Mr. Mc Williams' inadvertent delivery to the prosecution of Ms. woods pretrial statement did not waive the attorney-client privilege.

(2 **B** 11)

Mr. McWilliams, and the appropiate solution was to bar the use of Ms. Woods pretrial statement as shown in the transcript, as well as her in-court testimony, which was the fruit and product of the pretrial statement.

Petitioner submits that the error here violated his rights under the fifth, sixth, and fourteenth Amendments to the United States Constitution. Violation of the attorney-client privilege is an undue burden on the exercise of the Sixth Amendment right to counsel. Moreover, disclosure of Ms. Woods' statement implicated petitioner's fifth Amendment right against self-incrimination. Finally, the disclosure of Woods' statement lightened the prosecution's burden of proof, thereby abridging petitioner's right to be presumed innocent and to be convicted only upon proof beyond a reasonable doubt. Therefore, the          appropriate test for reversibility of the error in permitting the prosecution to use the statement and testimony is that of that of Chapman V. California, Chambers V. Mississippi.

The chapman test was recently interpreted by the high court in Yates V. evatt as requiring a showing, beyond a reasonable doubt, that the error complained of "did not contribute to the verdict obtained."

To make that determination, a reviewing court "must take two quite distinct steps. First it must ask what evidence the Jury actually considered in reaching it verdict."

Finally, Petitioner submits that the remedy he requested in the superior court was not an unreasonable one. He did not ask for an order unconditionally barring the prosecution from using Ms. Woods' Testimony; rather, he merely asked the trial court to require the prosecution to demonstrate, as a precondition to using her testimony, that it had been obtained independently of the inadvertent disclosure made by Mr. Mc. Williams. Clearly, if the prosecution was ... already aware of Ms. Woods identity and of the damage her testimony could do to the defense, it could have conducted its own independent investigation of her potential testimony without reference to the inadvertently-given statement. It seems clear from the circumstances, however, that the prosecution was completely unaware of Ms. Woods until it learned of her statement through Mr. McWilliams' inadvertent delivery of it to Deputy District attorney Starks. The prosecution received Ms. Woods' statement from the defense attorney on Friday September 27, when the trial was scheduled to start monday, September 30. (Until that time, the prosecution had never interviewed or attempted to – CONTACT? Ms. woods]. However, the very next day, after receiving and reading the defense transcription of Ms. Woods statement to the defense investigator, the prosecution contacted Ms. Woods and interviewed her. The inference is strong that, until receiving the transcript, the prosecution either was unaware of Ms. Woods existence, or was unaware of her potential testimony, or both. Accordingly, the prosecution did not obtain Ms. woods testimony independently of the statement obtained from →

(2 B 12) continue B12

In short, in applying the chapman test to determine whether a nonstructural Federal constitutional error is harmless, this court may not simply reweigh the _____ evidence to conclude a hypothetical reasonable Jury, correctly instructed, would have Found Petitioner guilty. Instead, the pertinent question is whether an examination of the record in the case indicates that Petitioner's Jury would have done so. Petitioner Submits that the people cannot make to such a showing in the Factual circumstances of this case.

Although the Victims of the False imprisonment charges each identified Petitioner as one of the gun men, each was also a self-admitted liar, and none of them had known Petitioner before the night of the shooting. Ms. Woods, on the other hand, as Petitioner's girlfriend, was in a completely different posture. Coming From her, the assertion that petitioner had admitted complicity in the crime was devastating to petitioner's defense.

Accordingly, reversal is required.

(2 B-13)

1  Deborah L. Levy / State Bar #110995

2  405 14th Street / Suite 610

3  Oakland, CA. 94612

4  (510) 251-1850

5  Attorney for La France Beal

**FILED**
ALAMEDA COUNTY

MAR 27 1998

RONALD G. OVERHOLY, Exec. Off/Clerk
By _Nancey Regas_

6        IN AND FOR THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                              ALAMEDA COUNTY

8  PEOPLE OF THE STATE OF CALIFORNIA)              NO. 123338

9                  Plaintiff,          )           NOTICE OF MOTION TO

10  V.                                 )           RECONSIDER RULING ON

11  LA FRANCE  DAVID  BEAL             )           MOTION TO QUASH

12  _____ )

13  **INTRODUCTION**

14      On August 25, 1994, Joe Spencer was shot and killed in the apartment of Alena Bell. Five adults

15  were present were present in the apartment at the time of the shooting, Alena Bell, Sherry Thanars,

16  Feleshia Ross, Erie Robinson, and Cleveland Burgie.  Thanars did not testify at the preliminary

17  hearing, all the others did.  There is no physical evidence connecting Mr. Beal to the murder, the

18  prosecution's case rests on the testimony of the above witnesses.

19      To summarize the testimony at prelim, on the evening of the shooting, witnesses Bell, Ross, and

20  Robinson had been drinking and smoking marijuana, and all witnesses admitted lying to the police

21  about the events of that night, Ms. Bell gives a description of the suspect that differs from Mr. Beal,

22  Ms. Ross testified that she could not remember what the suspect looked like.  Mr. Burgie, aged 23

23  at the time of the prelim, said he knew a, "La Fonz" who was a grade ahead, back in second or third

24  grade, and identified Mr. Beal as that person. Mr. Beal was arrested 8/30/94, and has remained in

25  custody since then.

26      On January 13, 1995, two women were killed in Vallejo. One of the decedents, was the girlfriend

27  of Larry Spencer, the brother of the victim in our case. At an earlier stage of this case, Mr. Beal

28  was represented by Mr. James McWilliams. At the preliminary hearing (I RT 8-15,) he moved for

discovery of the police report concerning the Vallejo murders. The court denied his request (IV RT



1  10-15.) I also subpoenaed the police report concerning those murders. The Vallejo City Attorney

2  moved the court to quash the subpoena. On March 10, 1998, the motion was granted, but the court

3  specifically reserved the right of the defense to raise the issue and to provide more facts to the court

4  in support of the subpoena.

5

6  **DECLARATION OF COUNSEL IN SUPPORT OF MOTION TO RECONSIDER**

7     I, Deborah L. Levy, do hereby swear and affirm that the following is true and correct:

8  I am an attorney, licensed to practice in all the courts of the State of California, and the attorney of

9  record for Mr. Beal.

10    Joe Spencer, the victim in our case, has two prior felony convictions for narcotics. His PFN # is

11 APC194. I have information that Mr. Spencer was involved with sales of crack cocaine in the

12 Oakland- Berkeley area. I have reason to believe that Larry Spencer was also involved with selling

13 crack cocaine. He has a PFN # AIT055 and has a Berkeley address. Rhonda Thompson is known

14 to the Alameda county criminal index with PFN ASY981. One of the decedents had cocaine in her

15 when she died. No weapon was recovered in this shooting or the Vallejo shooting. Both shootings

16 were accomplished with the same caliber weapon. Both cases involve apparently unforced entry, with

17 multiple shots fired. It is the defense position that Mr. Beal did not commit the Oakland murder. The

18 defense is presenting an alibi defense. One of the prosecution witnesses, Cleveland Burgie, had an

19 article regarding the Vallejo murders in his wallet, in his property at the time of the prelim (III RT

20 88.)    The defense feels there are enough connections between the two murders that whoever shot

21 Joe Spencer, shot the two women in Vallejo. Without access to the Vallejo investigation, which no-

22 one in Alameda county has read, the defense is unable to pursue this defense.

23    Attached to this motion are the autopsy reports concerning the two women killed in Vallejo. In

24 informal discussions with this trial court, concerning this issue, Mr. Starks indicated that Judge Larry

25 Goodman had reviewed the relevant Vallejo police report. While talking with Mr. McWilliams, he

26 indicated that the report was reviewed, but only as to the 995 motion that had been filed. Counsel

27 would urge the court to conduct an in camera review of the material with the broader vision of

28 whether it contains any relevant or exculpatory material for the defense.

- 2 -

869

1  I swear under penalty of perjury of the laws of the State of California, that the above is true, except

2  as to those matters stated under information and belief, and as to those matters, I believe them to be

3  true. *Executed this 27th day of March in city of Oakland, California County of Alameda*

4  **POINTS & AUTHORITIES**  *Deborah P. Levy*

5  In <u>Pennsylvania V. Ritchie</u> (1987) 480 U.S. 39, 107 S. Ct. 989, 94 L.Ed.2d 40, the defense moved

6  to discover records concerning his daughter kept by the state children protective services. A state

7  statute made the records confidential.

8  "This court has never squarely held that the Compulsary Process Clause guarantees the right to

9  discover the identity of witnesses, or to require the Government to produce exculpatory

10  evidence......Instead, the Court traditionally has evaluated claims such as those raised by Ritchie under

11  the broader protections of the Due Process Clause of the Fourteenth Amendment...." Ibid 107 S.Ct.

12  1001. The court went on to say that the defendant's rights can be fully protected by requiring that

13  the files be submitted to the trial court for in camera review.

14  In <u>People V. Boyette</u> (1988) 201 Cal. App. 3d 1527, the court quoted from Ritchie, supra, and held

15  that in camera review of a videotape should have been ordered. "There is no way to balance those

16  competing rights without viewing the tape itself." The court notes that the defendant gets placed in

17  Catch-22 situation where they must make some showing about information that they do NOT

18  possess. Defense alleged they needed the material for impeachment of juvenile witnesses, and the

19  court found that the defense had made a sufficient showing.

20  **THIRD PARTY CULPABILITY**

21  In <u>People V. Clark</u>,(1992) 3 Cal. 4th 41, 10 Cal Rptr. 2d 554, the court addressed a third liability

22  culpability defense that was attempted to be raised by the defense,

23  " D. Right to Present a Defense

24  Defendant next contends he was denied due process because the trial court refused to allow him to

25  present evidence supporting his third party culpability defense, and because the trial court improperly

26  refused him discovery of relevant defense evidence. His proposed defense was that Bundy and Jack

27  Murray committed the charged murders, and Bundy then murdered Murray and framed defendant.

28

- 3 -

1.     [42] The applicable law was summarized in People v. Hall (1986) 41 Cal.3d 826, 833 [226 Cal.Rptr. 112, 718 P.2d 99]: 'To be admissible, the third-party evidence need ... only be capable of raising a reasonable doubt of defendant's guilt. At the same time, we do not require that any evidence, however remote, must be admitted to show a third party's possible culpability. ... [E]vidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt: there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime.' Ibib at p.131.   In our case although the defense is not in possession of a name of the culpable party, under Hall, the defense has met their burden of showing enough circumstantial evidence to raise a reasonable doubt.

WHEREFORE-The court needs to review the report in camera, to determine if there is any evidence relevant to the defense.

3/27/98

Respectfully Submitted,

*Deborah L. Levy*

Deborah L. Levy

- 4 -

CONTINUATION Pg 'D' EXHIBIT ALSO SUPPORTS CLAIM 2#

EVIDENCE IS ADMISSIBLE TO ESTABLISH THAT SOMEONE OTHER THAN THE PETITIONER MAY HAVE COMMITTED THE OFFENSE CHARGE AGAINST THE PETITIONER. CASES: PEOPLE V. HALL, (1986) 41 CAL 3d 826, 226 CAL Rptr 112, 718 p.2d 99. PEOPLE V. GUILLEBEAU, (1980 1st DISTRICT) 107 CAL App 3d 531, 549, 166 CAL Rptr 45.) ACCORDINGLY A PETITIONER IS ENTITLED TO DISCOVER EVIDENCE THAT SHOWS THAT ANOTHER PERSONS COMMITTED THE CRIME WITH WHICH THE DEFENDANT IS CHARGE.

THE PETITIONER NEED NOT ESTABLISH THAT THE REQUESTED INFORMATION WILL BE ADMISSIBLE AT TRIAL.

IN ORDER TO BE DISCOVERABLE, PETITIONER NEED NOT SHOW THAT THE EVIDENCE THAT THE PETITIONER SEEKS TO HAVE PRODUCED WOULD BE ADMISSIBLE AT TRIAL. PEOPLE V. COOPER, (1960) 53 CAL 2d 755, 770, 3 CAL Rptr 148, 349 p.2d 964.)

1  accounts and coroner's reports relating to the killing of

2  the two women in Solano County.  So I hope when the

3  question comes up as to the fragment or limited nature of

4  the supporting request for subpoena which was never

5  officially raised by a proper party, that the issue of the

6  supplemental information provides the Court with at least

7  what I have to support some interest in producing the

8  documents.

9  xxxx Let me say again that the killings in Vallejo were

10  reported in the newspaper as having a connection with the

11  killing of Joe Spencer in this case, that the newspaper

12  account indicated that a beenie was worn by the fleeing

13  culprit, that the nature of the killing and nature of the

14  ballistics in my information were consistent with the kind

15  of ballistics that would be found in the killings in this

16  particular case.

17      Now we learned last week that one of the witnesses

18  retained a news account of the Vallejo case which is some

19  evidence I think perhaps that goes to the issues of a

20  connection.  The Court has had my offer of proof from my

21  representing that my defense in this case is based on the

22  fact that Mr. Beal did not commit the crime.  I am looking

23  for third party liability.  I have the right at Preliminary

24  Hearing to put on an affirmative defense.  My request for

25  the subpoena was for the purpose of having the material at

26  an evidentiary hearing where I could actually use the

27  material in the hearing.  It wasn't for any discovery

28  purposes.

PERTINENT FACTS
GROUND TWO B2 EXHIBIT

TABLE OF AUTHORITIES: FEDERAL CASES

BERG ELECTRONICS, INC. V. MOLEX, INCORPORATED (D. DEL. 1995) 875 F. SUPP. 261   24

CHAMBERS V. MISSISSIPPI, (1973) 410 U.S. 284 . . . . . 12

CHAPMAN V. CALIFORNIA (1967) 386 U.S. 18 . . . . . 19, 26

DOE V. UNITED STATES (1988) 487 U.S. 201 . . . . . 27

ESTELLE V. SMITH, (1981) 451 U.S. 454 . . . . . 27

IN RE WINSHIP (1970) 397 U.S. 358 . . . . . 25

PENNSYLVANIA V. RITCHIE, (1987) 480 U.S. 39 . . . . . 12, 18

ULLMANN V. UNITED STATES, (1956) 350 U.S. 422 . . . . . 27

UNITED STATES V. BUMP, (13th CIR 1979) 605 F. 2D 548 . . . . . 23

MENDENHALL V. BARBER-GREENE CO. (N.D. (1993) 531 F. SUPP. 951 . . . . . 25

HELMAN V. MURRAY'S STEAK, INC (D. DEL 1990) 728 F. SUPP 1099 . . . . . 24

UNITED V. JONES (4th CIR (1982) 696 F. 2D 1069 . . . . . 23

IN RE GRAND JURY PROCEEDINGS (4th CIR 1984) 727 F. 2D 1352 . . . . . 23

STATE CASES

CITY OF ALHAMBRA V. SUPERIOR COURT, (1988) 205 CAL. APP. 3D 1118 . . . . . 15, 16

IZAZAGA V. SUPERIOR COURT, (1991) 54 CAL. 3D 356 . . . . . 27

PEOPLE V. BABBITT, (1988) 45 CAL. 3D 660 . . . . . 12

PEOPLE V. HALL, (1986) 41 CAL. 3D 826 . . . . . 17

PEOPLE V. MASSIE, (1967) 66 CAL. 2D 899 . . . . . 19

PEOPLE V. MEREDITH, (1981) 29 CAL. 3D 682 . . . . . 29

PEOPLE V. RISER (1956) 47 CAL. 2D 566 . . . . . 13

CARLSON V. SUPERIOR COURT (1976) 58 CAL. APP. 3D 13 . . . . . 13

PEOPLE V. RODRIGUES, (1994) 8 CAL. 4TH 1060 . . . . . 28

PEOPLE V. SMITHEY, (1999) 20 CAL. 4TH 936 . . . . . 28

PITCHESS V. SUPERIOR COURT, (1974) 11 CAL. 3D 531 . . . . . 13

SACRAMENTO NEWSPAPER GUILD V. SACRAMENTO COUNTY BOARD OF SPV'S (1968) 263 CAL. APP. 2D 41 . . . . . 12

STATEMENT AND FACTS: NEW CLAIM 3 "PROSECUTOR MISCONDUCT"

THE COURT ERRORED IN DENYING DEFENSE REQUEST TO POSTPONE THE TRIAL AN ADDITIONAL DAY TO BRING WITNESS SCOTT ROBINSON BEFORE THE COURT SO THAT THE COURT COULD DETERMINE IF HIS TESTIMONY WOULD BE FOUND ADMISSIBLE [SEE EX-HIBIT 1 Supports]. IN ADDITION THE COURT ERRED IN NOT POSTPONING THE TRIAL, A DAY TO EXAMINE THE PROPOSED DEFENSE WITNESS SCOTT ROBINSON THIS DENIED ME A FAIR TRIAL [SEE EXHIBITS 2-4]. SCOTT ROBINSON WOULD SUPPOSEDLY HAD TEST-IFIED THAT SHERRY THANARS HAD ADMITTED TO HIM THAT SHE WAS NOT SURE THE guy IN THE APARTMENT WAS THE SAME guy SHE IDENTIFIED. WITH THE JURY BEING OUT FOR SUCH A LONG TIME, STILL SPLIT 7-5 AFTER 2 DAYS OF DELIBERATING, WITH THE PROSECU-TION WITNESS BEING OF QUESTIONABLE CREDIBILITY, HIS TESTIMONY COULD HAVE BEEN DECISIVE [SEE EXHIBITS 2-4]. EXHIBIT 5-6,7 SUPPORTING INFORMATION good CAUSE APPEARING: THE TRIAL JUDGE HARRY SHEPPERD WAS BIAS AND PREJUDICE TOWARD PETITIONER HE "VIOLATED COURT ORDER" HIM AND DISTRICT ATTORNEY JEFFREY STARKS BY WITHOLDING A WITNESS TO NOT COME FORWARD TO TESTIFY IN TRIAL DEPRIVED ME A FAIR TRIAL WHICH IS a BRADY VIOLATION: D.A JEFFREY STARKS ALSO COMMITTED BRADY VIOLATION 1 BY •••• SEE "REMOVAL ORDER EXHIBIT 5-6] ALSO SEE EXHIBITS 1-7 SUPPORTS.

A) WITNESS FAVORABLE TO THE ACCUSED (OR EXISTENCE OF) JACKSON V. WAINWRIGHT (68) 390 F. 2d 288 (5th CIR); NORTON V. SUPERIOR CT.. , (59) 173 C.A. 3d 133; PEOPLE V. MC MANIS, (92.) 26 C.A. 3d 668 (EYEWITNESS ACCOUNTS To police)

B) EVIDENCE TENDING TO AFFECT CREDIBILITY OF EVIDENCE USED BY PROSECUTION; THOMAS V. U.S. (65) 343 F. 2d 49 (9th CIR)

C) PROSECUTION HAS OBLIGATION NOT TO LET FALSE EVIDENCE go UNCORRECTED AT TRIAL, EVEN IF PROSECUTION DID NOT SOLICIT IT : (NAPUE V. ILLINOIS, (54) 350 U.S. 264)

D) PROSECUTOR MUST REVEAL ANY KNOWN CONTRARY STATEMENTS OF HIS OWN WITNESS, EVEN THOUGH HE MAY BELIEVE CURRENT TESTIMONY TO BE TRUE : CILES V. MARYLAND, (67) 346 U.S. 66)

E) FAHY V. STATE OF CONNECTICUT, 375 U.S. 85, 84 S. Ct. 229, 11 L. Ed. 2d 171.

A REVERSIBLE ERROR By NOT ALLOWING OR LIEING NOT LETTING THAT WITNESS TO TESTIFY IS ALSO CONSIDERED TAMPERING WITH EVIDENCE AND VIOLATED "SUBPEONA ORDERS" [WHICH EXHIBITS 1-6 SEE] SHOWS AND SUPPORT THAT WITNESS SCOTT ROBINSON WAS ORDER BY THE COURT JUDGE HARRY SHEPPERD TO BE BROUGHT INFRONT OF THE COURT. VIOLATION Due process Kyles V. Whitney, And Mooney V. Holohan.

SEE CONTINUATION pg:

EXHIBIT 1

1161

1   LaFrance Beal - P01542

2   San Quentin State Prison Reception Center

3   San Quentin CA., 94974

4   In Pro Per

5           IN AND FOR THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

6           COUNTY OF ALAMEDA- HAYWARD JUDICIAL DISTRICT

7

8   PEOPLE OF THE STATE OF CALIFORNIA          NO. 123338

9   V.                                         MERITORIOUS POINTS

10  LAFRANCE BEAL                              ON APPEAL

11  _____/             PENAL CODE SEC. 1240.1(2)

12  The following matters appear to be arguably meritorious points for appeal:

13      (1) The court erred in denying the pre-trial defense motion regarding excluding the testimony of

14  Monica Woods,

15      (2) The court erred in denying the pre-trial defense motion to review in camera an allegedly

16  related Vallejo police report,

17      (3) The court erred in restricting the defense from questioning the 3 female percipient witnesses

18  about their belief that the fourth percipient female witness was involved with the murder of Joe

19  Spencer, despite repeated defense requests,

20      (4) The court erred in denying the defense request to postpone the trial an additional day to bring

21  witness Scott Robinson before the court so that the court could determine if his testimony

22  would be found admissible,

23      (5)Any other issues that appear meritorious.

24

25

26

27  DATED  7/20/98

28                                      Deborah L. Levy, Bar #110995, Attorney for Mr. Beal

                                        405 14th Street/ Suite 610

*EXHIBIT 2*

1145

1

2                                            ARGUMENT

3          As previously argued before the court, see counsel's motion for a protective order, defense

4     contends that the testimony of Monica Woods was not admissible at the trial. Defense still argues

5     that the court's ruling, allowing unfettered use of her testimony, including the original statement taken

6     from the public defender's investigator, was in error.

7          In People V. Macias (1997) 16 Cal. 4th 739, the California Supreme Court reviewed the

8     admission of a minor's statement to a probation officer, to impeach the minor at trial. The Court

9     found that it was permissible to use the minor's statement, not in the government's case in chief, but

10    if the minor testified, it could come in for impeachment. The Court focused on the importance of the

11    open discussions between minor and probationer, but could not sanction the minor lying under oath,

12    and not being impeached. While discussing the issues, the Court quoted from Ramona R. V. Superior

13    Court (1985) 37 Cal. 3d 802, in discussing why the minor's statement cannot be used in the

14    prosecution's case in chief. Based on three principals, "First, the adversarial nature of our judicial

15    system demands that the prosecution provide sufficient evidence to establish guilt without the aid of

16    the minor's testimony, which would impermissibly lighten the prosecution's burden. (Id. at p.809.)"

17    This situation is analogous as the defendant herein, when talking with his lawyer, pointed his lawyer

18    to a possible defense witness, Monica Woods. His lawyer sent the defense investigator to interview

19    this witness. Defense provided an alibi witness statement to the prosecution pursuant to P.C. 1054,

20    which  inadvertently contained an additional statement, that of Monica Woods. By allowing her

21    testimony, and especially allowing use of her prior statement, the court impermissibly lightened the

22    prosecution's burden of proof.

23         During the motion for a protective order, the D.A. argued that the defense was speculating

24    concerning any prejudice that might occur at trial, due to the inclusion of Ms. Woods' testimony.

25    Defense has attached, as Exhibit A, an affidavit from a juror, which shows the prejudice Mr. Beal

26    suffered as a result of the inclusion of Ms. Woods' statement.

27                                           ↓    ↓  I didn't receive a fair trial

28         In addition, the court erred in not postponing the trial, a day, to examine the proposed defense

                                              -2-,                    X X X X

*Ex HIBIT 3*                                    1146

1    witness, Scott Robinson.  Scott Robinson would supposedly had testified that Sherry Thanars had

2    admitted to him that she was not sure the guy in the apartment was the guy she identified.  With the

3    jury being out for such a long time, still split 7-5 after 2days of deliberating, with the prosecution

4    witnesses being of such questionable credibility, his testimony could have been decisive.

5

6

7    WHEREFORE the defense urges the court to grant a new trial.

8

9

10    June 16, 1998

11

12

13    Respectfully Submitted,

14

15

16

17

18    Deborah L. Levy, attorney for Mr. Beal

19

20

21

22

23

24

25

26

27

28

- 3 -

*ExHIBIT 4*

1147

1  DEBORAH L. LEVY

2  405 14TH STREET/ SUITE 610

3  Oakland, CA 94612

4  (510) 251-1850

5  ATTORNEY FOR BEAL

6

7  IN AND FOR THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

8  COUNTY OF ALAMEDA- HAYWARD JUDICIAL DISTRICT

9

10  PEOPLE OF THE STATE OF CALIFORNIA)                    NO. 123338

11                              Plaintiff, )

12                                         )                    JUROR  AFFIDAVIT

13  LA FRANCE BEAL                         )

14                              Defendant,)

15  _____

16  I, Roderick Lawson hereby swear and affirm that the following is true and correct. I was a juror

17  in the above entitled action. I was juror #3. The jury retired to deliberate around 11:00 a.m. on

18  Tuesday, 4/28/98. On April 29, in the afternoon, we sent a note to the judge asking about what is

19  the procedure if we could not reach a unanimous vote. He informed us that it had been a long

20  trial, and that we should continue to deliberate. On April 30, in the afternoon we sent in a note

21  that we were unable to agree on a verdict. The judge called us in and the foreman told him that

22  we were divided 7-5. The judge called the lawyers into the back. When he returned, the foreman

23  indicated that there may be some movement in the jury. We returned to deliberate. Friday, May

24  1st, around 2:00 p.m., we had reached a unanimous guilty verdict.

25      I was a not guilty vote from the start. The prosecution witnesses were not very credible.

26  Cleveland Burgie was not credible at all. The other 4 ladies were real shakey. There were a lot of

27  holes. They lied about stupid things, like both sisters throwing two dollars down to their mother.

28  There was a female juror who also voted not guilty and she and I were the last ones to change

    our votes to guilty. Monica Woods' testimony was what made me change my vote. We had

*1148*

1   her  testimony read back.  It was clear she cared for the defendant.  She could only know about

2   the  offense from the defendant. She described how the house was, and how they ran down the

3   steps.

4

5

6

7

8   I swear and affirm that the above is true and correct, except for those matters asserted under

9   information and belief, and as to those matters, I believe them to be true.

10

11   Executed on this   19 TH day of June, 1998, in the city of   OAKLAND  , California,

12   county of  ALAMEDA .

13

14   Roderick A Lawson

15   Roderick Lawson

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 5

FILED ~~998~~
ALAMEDA COUNTY

APR 2 4 1998

RONALD G. OVERHOLT, Exec. Off./Clerk
By Marsha Smith

1  DEBORAH L. LEVY
   405 14th Street/ Suite 610
2  Oakland, CA. 94612
   (510) 251-1850
3  Attorney for Defendant Beal

4

5         IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

6      COUNTY OF ALAMEDA- OAKLAND-PIEDMONT-EMERYVILLE JUDICIAL
                              DISTRICT
7

8
   THE PEOPLE OF THE STATE OF CALIFORNIA          NO. 123338
9             Plaintiff                           REMOVAL
                                                  ORDER
10 V.

11 LA FRANCE BEAL

12                    Defendant
                                            /
13

14  TO: SAN QUENTIN PRISON, CALIFORNIA DEPARTMENT OF CORRECTIONS-
15  ALAMEDA COUNTY SHERIFF'S DEPARTMENT- SANTA RITA

16

17    GOOD CAUSE APPEARING: IT IS HEREBY ORDERED that Scott Robinson
   (PFN AQR470) C.D.C. # K31630 be transported to Alameda County, Santa Rita, on
18 April 27, 1998, in order to appear in the Alameda County Superior Court, Hayward, as a
   witness. He is further ordered to remain at Santa Rita until his testimony is completed
19 and he is no longer needed in court. When he is completed testifying, he is to be
   transferred back to San Quentin. *Hem never Finished D.A sent him to Prison*
20    *the last Day of my trial When he was suppose to speak.*
      *We had a order 4-1-98 to speak of*
21

22 DATED: 4/24/98

23                                    JUDGE OF THE SUPERIOR COURT

24                                    **VERNON NAKAHARA**

25

26

27

28

EXHIBIT 6

FILED 087
ALAMEDA COUNTY

APR 13 1998

CLERK OF THE SUPERIOR COURT
by Jackson Richardson
DEPUTY

1  Deborah L. Levy, State Bar #110995
2  405 14th Street/ Suite 610
   Oakland, CA. 94612
3  (510) 251-1850
   Attorney for LaFrance Beal
4

5        IN AND FOR THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

6            COUNTY OF ALAMEDA- OAKLAND JUDICIAL DISTRICT

7  PEOPLE OF THE STATE OF CALIFORNIA )          NO. 123338
8                                     )          REMOVAL
              Plaintiff,              )          ORDER
9                                     )
                                      )
10                                    )
   LA FRANCE BEAL                     )
11                                    )
              Defendant               )
12  _____ )

13
   TO THE ALAMEDA COUNTY SHERIFF'S OFFICE, SANTA RITA DETENTION
14  FACILITY

15  GOOD CAUSE APPEARING: IT IS HEREBY ORDERED THAT Scott Robinson, PFN
16  AQR470, be transported, on April 20, 1998, from the Santa Rita detention facility to the
    Hayward court, in order to testify in the above matter in Dept. 40. Mr Robinson is to
17  remain in Hayward until he has completed his testimony, at which time he is to be returned
    to Santa Rita.
18

19  DATED: april 13, 1998
20

21

22

23  _____
24  JUDGE OF THE SUPERIOR COURT

25

26

27

28

                              - 2 -

EXHIBIT 7

-999-

ju2-753 5M 7/61 (new)

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
### IN AND FOR THE COUNTY OF ALAMEDA

**DEPT. 40**

Date:  April 24, 1998   Hon.   HARRY R. SHEPPARD  , Judge          Nancy Regas  , Deputy Clerk
                                         Tony Amato  , Deputy  Sheriff   Sandi Chapa, #11031  , Reporter

**THE PEOPLE OF THE STATE OF CALIFORNIA**

**Plaintiff**

vs.

**LAFRANCE D. BEAL**                              **Defendant**

**Counsel appearing
for Plaintiff**

Jeff Stark, Deputy District Attorney

**Counsel appearing
for Defendant**

Deborah Levy, Esquire

**NATURE OF
PROCEEDINGS:**   JURY TRIAL - DAY 15 and Evidentiary Hearing
Pursuant to Section 402 Penal Code

**ACTION NO.**   123338
ARA949
4190410

The above entitled action comes on calendar, having been continued from April 20 and April 23, 1998, for Further Jury Trial and Evidentiary Hearing.

**At 9:00 a.m.**  Court and counsel discuss legal issues in chambers.

**At 9:45 a.m.**  Court, counsel and the defendant are present. Outside the presence of the jury, the Court orders the Defense motion to continue the trial is denied.  The Court orders the Defense may proceed on April 27, 1998 with further testimony of Alena Bell and Scott Robinson if they are present. The Court states the jury instructions on the record which will be recited to the jury on April 27, 1998.

**At 10:10 a.m.**  the Court orders the matter continued to April 27, 1998 at 9:00 a.m. in Department 40 for Further Jury Trial. Court is adjourned.

From Continuation pg . Supporting case law

• States : The chief reason for concluding that the story was a concoction rest with officer gary Wakshul. This police officer, whose duty it was to stand Vigil over mr. Jamal, was present throughout the critical time period, and reported affirmatively that mr. Jamal made "no comment". The commonwealth orchestrated officer wakshul's availability for trial, conduct with itself is a due process violation, for "The government may not deny access to a witness by hiding him out. (Like in petitioners case). Freeman V. Georgia, 599 F. 2d 65 (5th cir. 1979). See also united States V. Valenzuela-Bernal, 458 U.S. 858 (1982) government may violate due process by deporting material witness • scott Rebinson was hidden).

STATEMENT AND FACTS: Jury Misconduct Claim 4th NEW CLAIM

THE COURT Erred When ATTORNEY MR.McWilliams on August 8, 1997 IN The Superior Court of Alameda County Dept. No 7, Filed A "Declaration of Conflict of Interest" [Declaration of Interest of EXHIBIT 8 see]. Damage Was Done and the Court Appointed Me with NEW COUNSEL Deborah Levy was appointed to try to Clean up Mr. McWilliams mess or negligence or misrepresentation and errors. Do to error in petitioner instant Case Suffered an relentless unlawful conviction as a result of my State and Federal Constitutional right to Due process of law being Unequivocally Violated by the Magistrate Harry Shepperd. It shows the error pertaining to the petitioner Was The "Final Blow". Specifically, The Foreman in the instant ruling in petitioner Case made it Clear very to the trial Magistrate Harry Shepperd That the Jury Was Unable to reach a Unanimous decision, Thereby establishing their Verdict of a "HungJury" The Magistrate Harry Shepperd !! Asked the forePerson twice if they Were to Continue to deliberate, is there a reasonable possibility that you can arrive at a Verdict? Foreperson, Harry Shepperd Magistrate im asking you that. Foreperson No, I Dont think So your Honor. The court and Magistrate Harry Shepperd again: Again is there anything the Court Can do to assist you in arriving at a Verdict, Such as Rereading the Jury instructions or read back of further Testimony by the Court Reporter? Twice Foreperson: Again i dont think So your Honor. Judge Harry Shepperd Refusal to Allow the court to endorse this Verdict Completely undermined the Due process guarantees Afforded to the Accused, As the current Verdict on File in the instant Case does not reflect the Verdict initially arrived at by Jury in instant case.

SEE EXHIBITS 8, 9, 10, 11, 12.

→ Cases Similar to petitioner
A. Per Curiam Packer V. Hill, 291 F.3d 569 (2002)
B. Barber v. Municipal ct (1979) 24 C3d 747, 157 CR 658
C. Chambers V. Florida, 309 U.S at 235-238
D. Williams V. Taylor, 529 U.S. 362, 405-406 (2000)
E. People V. Gainer, 19 Cal. 3d 835, 852, 566 P.2d 997 (1977) With Allen V. United States, 164 U.S 492, 501 (1896)
F. Cool V. United States, 409 U.S 100, 104 1972
G. In re Winship, 397 U.S 358, 364 (1970) [499 U.S. 279, 292]
H. Rogers V. Richmond, 365 U.S at 540-541, See also Lego 404 U.S, at 485
I. Gideon V. Wainwright, 372 U.S. 335 (1963)
J. Arizona V. Fulminate, 499 U.S. 279 (1991)
K. Miranda V. Arizona (1966) 384 U.S 436, 86 S.ct 1602, 16 L. Ed. 2d 694.
L. United V. CRONIC, 466 US at 656-657, 104 S.ct. at 2145-46; Holloway V. Arkansas, 435 U.S 475 498, 98 S.ct 1173, 1181 55 L.Ed.2d 426 (1978).
M. United V.C. See (1974 C.A9) 505 F.2d 845.
N. McClesky V. ZANT, (1991) 499 U.S 467, 493-96, 111 S.ct. 1454, 113 L.Ed 2d 517
O. Chapman V. California, Supra 386 US pg 24, 87 S.ct 824
P. Wright V. West, 505 U.S. 277 295-97, 112 S.ct, 2482, 2492, -93 120 L.Ed .2d 225 (1992)
Q. most definitely Strickland V. Washington, 104 S.ct 2052, 466 U.S. 668, (U.S. Fla, 1984)

$EXHIBIT$ 8

JAY B. GASKILL
PUBLIC DEFENDER
ALAMEDA COUNTY COURT HOUSE
OAKLAND, CALIFORNIA 94612

(510) 670-5010

P

831

FILED
ALAMEDA COUNTY

AUG -8 1997

RONALD G. OVERHOLT, Exec. Off./Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

THE PEOPLE OF THE STATE
OF CALIFORNIA,

Plaintiff,

v.

LAFRANCE BEAL,

Defendant.

_____/

Dept. No. 7

No. 123338

## DECLARATION OF CONFLICT OF INTEREST

1. I am a member of the State Bar of California and duly authorized to make this declaration on behalf of the Public Defender of the County of Alameda.

2. I am informed and believe that:

(a) the above defendant has been properly found by the Office of the Public Defender to be an indigent person who is entitled to legal assistance in this case at public expense; and;

(b) a conflict of interest exists such that it would be a violation of the Rules of Professional Conduct for the Public Defender to continue to represent defendant.

WHEREFORE, pursuant to section 987.2 of the Penal Code of California, your affiant requests this Court appoint private counsel to represent the above named defendant.

Executed this 31st day of July, 1997, at Hayward, California

James McWilliams
Attorney at Law

## O R D E R

GOOD CAUSE APPEARING THEREFOR, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that _Deborah Douy_____, a private attorney is hereby appointed to represent the above named person.

Done in Open Court this _8th_ day of _Aug_, _1997_

JUDGE

CONFLICT

EXHIBIT 9

1    April 29, 1998

2                    PROCEEDINGS

3         THE COURT:  We're back on the record in the

4    matter People versus Beal.  All jurors are present, properly

5    seated.  Both counsel are present, defendant is present, the

6    alternate jurors are not present.

7         Good afternoon, ladies and gentlemen.

8    Mr. Foreman, I received your note which read as follows:

9    We, the jury, request instructions regarding the procedures

10   we are to follow if no unanimous decision regarding the

11   charges can be obtained period, parenthesis.  Possible hung

12   jury, end parenthesis.  My remarks to you are as follows:

13   You listened to approximately three weeks of testimony, you

14   deliberated for a very short time yesterday morning, which

15   was probably no more than an hour yesterday morning.  And

16   yesterday afternoon, which was for approximately three or

17   three and a half hours, and then this morning and then for

18   about an hour and a half this afternoon.  So the period of

19   time that you've had to deliberate in this case when

20   compared to the three weeks of testimony that you received

21   is not inordinate.  So I'm going to ask that you continue to

22   deliberate on the case for the remainder of the day until

23   the time you decide to retire for this evening.  And then

24   come into tomorrow and continue to deliberate.  If the

25   situation does not improve and I don't know where you stand,

26   I'm not going to ask that question now, but if the situation

27   doesn't improve after more deliberations let me know by

28   another written inquiry or message.  My point is that you

1551

EXHIBIT 10

1   haven't really spent, when you consider the volume of the
2   evidence and testimony that you received, you haven't really
3   spent an inordinate period of time deliberating.  So please
4   return to the jury room and continue your deliberations.
5   Come back tomorrow at 9:00 o'clock.  Again, continue and let
6   me know how you're proceeding, if you find that necessary.
7   All right.  Thank you, Mr. Foreman.
8                   All right.  We're in recess.
9                       (Whereupon the proceedings
10                           were adjourned.)
11                             --o0o--
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 11

X Here

1 | April 30, 1998

2 | PROCEEDINGS

3 | THE COURT: We're back on the record of People

4 | versus Beal. Both counsel and defendant are present and the

5 | jury are present and properly seated.

6 | Mr. Foreperson, you sent a note indicating to the

7 | Court that you are not able to reach an unanimous decision.

8 | If I were to ask you -- if you -- if you were to continue to

9 | deliberate, is there a reasonable probability that you can

10 | arrive at a verdict? I'm asking that to you.

11 | THE FOREPERSON: No, I don't think so, your

12 | Honor. _2nd_

13 | xx THE COURT: Is there anything the Court can do to

14 | assist you in arriving at a verdict, such as rereading the

15 | jury instructions or read back of further testimony by the

16 | court reporter?

17 | THE FOREPERSON: No, I don't think so, your

18 | Honor.

19 | THE COURT: How many ballots have you taken?

20 | THE FOREPERSON: Three ballots.

21 | THE COURT: Now, listen carefully to the next

22 | question, Mr. Foreperson. I don't want to know which way

23 | the vote is, I want to know the numerical count only. 7-5,

24 | 6-6 something like that. I don't want to know which way.

25 | Okay. What was the numerical breakdown on the last ballot?

26 | THE FOREPERSON: 7-5.

27 | THE COURT: You remember the numerical breakdown

28 | on the ballot before that?

_They pressure the foreman to change his_
_decision and convict me. The Judge_ 1553

EXHIBIT 12

```
 1              THE FOREPERSON:  7-5.
 2              THE COURT:  On, the first ballot?
 3              THE FOREPERSON:  I think 6-6-.  It was a split.
 4              THE COURT:  All right.  Please remain seated for
 5     a few minutes, I want to discuss this matter with counsel
 6     and I'll discuss it with counsel, so just remain seated.
 7                          (Recess taken.)
 8              THE COURT:  We're back on the record.  Ladies and
 9     gentlemen, I was discussing this matter with counsel in
10     chambers.  The bailiff indicated that the foreperson
11     communicated to him that you would desire to continue
12     deliberations.  I'll make this remark to you, that was going
13     to be my judgment anyway.  There's nothing easy about jury
14     deliberations, it's a matter that's rarely commented on any
15     place.  It's not an easy task, essential task.  The
16     testimony in this case was approximately 3 weeks.. You've
17     been at that time for two and a half days.
18              Again, I'll repeat myself.  As I said yesterday,
19     that in and of itself is not an inordinate period of time.
20     I recognize there has been little movement apparently.  On
21     the other hand, two half days in a very serious case such as
22     this is not an inordinate period of time to deliberate.
23              I'm going to recess you for tonight.  You're
24     ordered to return tomorrow at 9:00 o'clock to continue your
25     deliberations.  Have a good evening.
26                          --o0o--
27
28
```

## G R O U N D   T W O :

~~[redacted]~~
### $9C - 12C$

In the instant case, petitioner suffered an unlawful conviction as a result of his State and Federal Constitutional Right to the Due Process of Law being Unequivocally violated by the trial Magistrate.

Specifically, the jury foreman in the instant case made it clear to the trial Magistrate that the jury was unable to reach a unanimous decision, thereby establishing their verdict of a "hung jury." The Magistrates refusal to allow the Court to endorse this verdict completely undermined the Due Process guarantees afforded to the accused, as the current verdict on file in the instant case does not reflect the verdict initially arrived at by jury in the instant case.

///

///

///

///

10C

## S U P P O R T I N G   F A C T S :

In the instant case, petitioner received a trial by jury. On April 29, 1998, subsequent to the jury's commenced deliberation of the instant case, the foreman of the jury submitted a note on behalf of the jury which read as follows: "We, the jury, request instructions regarding the procedures we are to follow if no unanimous decision regarding the charges can be obtained period, parenthesis. Possible hung jury, end parentheses [RT-1551-1552]." Petitioner would like to initially note that while the Judge did in fact respond to their inquiry with a conclusory opinion that the jury had not spent enough time in the deliberation of the instant case, however, he did not provide the most remote answer to their inquiry as to exactly and specifically what should they do in the event that they could not reach a unanimous verdict in the instant case. Consequently, the jury's question was left unanswered by the magistrate which unequivocally violated petitioner's right to a fair and impartial trial. This violation was both critically damaging and of constitutional magnitude, as it clearly failed to provide petitioner's jury with the entitled legal information they needed to reach the prospective verdict of which they inquired via the jury foreman.

Compoundingly, on April 30, 1998, the jury foreman, though on behalf of the jury he still hadn't received a both legal and constitutionally intelligent response to the jury's inquiry of the process to be engaged in the event that they cannot reach a unanimous verdict, sent a note indicating to the Court that the jury could not reach a unanimous decision.

$$ \vert \vert \text{ C.} $$

To further lend both gravity and clarity to petitioner's issue at bar, it would be well to highlight the following chain of questioning employed by the magistrate. "COURT: ...If you were to continue to deliberate, is there a reasonable possibility that you can arrive at a verdict? I'm asking you that. THE FOREPERSON: No, I don't think so your Honor. THE COURT: Is there anything the Court can do to assist you in arriving at a verdict, such as rereading the jury instructions or read back of further testimony by the court reporter? THE FOREPERSON: I don't think so, your Honor."

$$ \downarrow \qquad\qquad \downarrow \qquad\qquad \downarrow $$

While the judge indicated for the record that the foreman made some indications to the Bailiff that they desired to continue to deliberate, the judge equally made it clear that that would've been his decision in spite of the noted sentiments expressed to the Bailiff. This presentation of facts further substantiates the magistrates unconstitutional systematic denial of providing the jury in the instant case with the previously requested adequate procedure of how to render a 'hung jury' verdict in the instant case. In light of such, it is petitioner's contention that the court's failure to both realistically and constitutionally acknowledge the jury's dilemma of a prospective hung jury by providing them with the required legal information to facilitate such a decision violated petitioner's both State and Federal Constitutional right to the due process of law and a fair and impartial trial, consequently, rendering the verdict in the case at bar unconstitutional, thereby, mandating it's reversal in the interest of justice.

SUPPORT STATEMENT AND FACTS Continue E

NEW CLAIM 5 * PROSECUTOR MISCONDUCT * IMPARTIAL OF THE Judge

Impartiality of Judge Harry Shepperd Due To his abuse and discretion by not recusing himself by conflict of interest denied me my right to a impartial Judge and denied me and by so a fair trial The conflict of interest is forseen in his motion Ruling as well [specifically mention in CLAIM 5 EXHIBIT 'E' pg 3].

And By ground 2 by denying "Third party Culpability," That murders was committed by others, by not securing witness Favorable To Me. IN Further supports of A conflict of interest the Judge Harry shepperd represented the prosecutor Jeffrey starks Father's current wife in an Estate PLAN which was a conflict of interest by not recusing himself denied me a impartial Judge and a fair trial Due to him having a relationship with prosecution Family See Ex- HiBiT 'E', Support cases Below 1-5 and California code of Judicial Ethics cases on cont- nuation pg A-B-C

1, PRETRIAL MOTIONS and merits 60.03[2](a)(e) * The Judge has personal Knowledge of disputed evidentiary Facts concerning The proceeding. [58] The Judge is deemed to have per- sional Knowledge if the Judge, The spouse of the Judge, or a person within the third degree. if the relationship to them. 58.1 or the spouse of that person, is like to be a material witness in proceed. 58.2

2, THE Judge has a financial interest in the subject matter of a proceeding or in a party to the proceeding. A Judge has a Financial interest if a spouse or minor child living in the household has a Financial interest or the Judge or his or her Spouse is a Fiduciary Who has a Financial interest. [59] A financial interest is defined. As ownership of more than One percent legal or equitable interest or a legal or equitable interest of a fair MARKET Value in excess of $ 1,500 however, ownership in a mutual or common investment Fund that holds securities is not a financial interest unless the Judge partipates in Fund manage- ment.

A, chapter 80 Defendants trial rights * 80.09(e)

B, The right to an impartial Judge * 80.09(4), 170.1

C, THe right to prosecuturial Fairness * 80.09(5).

SEE Continuation pg of cases California code of Judicial Ethics

DISQUALIFICATION:

A) THE Appellate JUSTICE HAS APPEARED OR OTHERWISE SERVED AS A LAWYER IN THE PENDING MATTER OR HAS APPEARED OR SERVED AS A LAWYER IN ANY OTHER MATTER INVOLVING ANY OF THE SAME PARTIES IF THAT OTHER MATTER RELATED TO THE SAME CONTESTED ISSUES OF FACT AND LAW AS THE PRESENT MATTER.

B) WITHIN THE LAST TWO YEARS (1) A PARTY TO THE proceeding, OR AN OFFICER, DIRECTOR OR TRUSTEE THEREOF, EITHER WAS A CLIENT OF THE JUSTICE WHEN THE JUSTICE WAS ENGAGED IN THE PRIVATE PRACTICE OF LAW OR WAS A CLIENT OF A LAWYER WITH WHOM THE JUSTICE WAS ASSOCIATED IN THE PRIVATE PRACTICE OF LAW; OR (2) A LAWYER IN THE PROCEEDING WAS ASSOCIATED WITH THE JUSTICE IN THE PRIVATE PRACTICE LAW.

C) THE APPELLATE JUSTICE REPRESENTED A PUBLIC OFFICER OR ENTITY AND PERSON- ALLY ADVISED OR IN ANY WAY REPRESENTED SUCH OFFICER OR ENTITY CONCERNING THE FACTUAL OR LEGAL ISSUES IN THE PRESENT PROCEEDING IN WHICH THE PUBLIC OFFICER OR ENTITY NOW APPEARS.

12 C

## M E M O R A N D U M   O F   P O I N T S   A N D   A U T H O R I T I E S :

The Trial Court's failure to declare mistrial was unconstitutional, because it failed to provide the jury with adequate instructions how to do so and after the foreman in the instant case bringing it to his attention.

Trial Court's refusal to declare mistrial proper when not clear that the jury was deadlocked because the jury had deliberated less than two days (113 S. Ct. 262; U.S. V. Green, 962 F.2d 938.

Trial Court's refusal to declare mistrial proper despite divided jury because jury did not indicate further deliberations would be fruitless but rather asked judge to clarify earlier instructions (U.S. V. Hotz, 620.2d 5, 6-7). In the instant case at bar, the foreman made it clear to the judge that the jury was unable to reach a unanimous verdict and that there was no further information that they could be provided to aid them in rendering a different verdict.

In light of the foredisclosed facts outlined herein, there can be no doubt that the magistrate in the case at bar committed such error of constitutional magnitude requiring reversal of the instant conviction. The court's failure to provide the jury with it's specifically requested remedy in the event that they could not reach a verdict compounded the committed error. Petitioner prays for relief of the conviction at bar.

EXHIBIT E pg 3

1   or excuse me -- your copies pending or after the expiration

2   of the appeal time.

3          MR. STARK:  I shred them.

4          MS. LEVY:  I've been returning them to the court

5   where they're issued, your Honor.  I don't have any problem

6   with that.

7          THE COURT:  The Court order is very clear:

8   They're confidential documents.  They're not to be

9   circulated for any other purpose other than this jury

10  selection.  Ms. Levy, are there other matters that -- oh,

11  there's one other matter I disclosed to counsel.  That is,

12  some years ago, I represented the prosecutor's father's

13  current wife in an estate plan.  I never met her personally,

14  my communication with her was by telephone when she was in

15  Washington D.C., I never met her that I can recall.  I

16  disclose that for purposes of the record I do not intend to

17  recuse myself on it.  I see no conflict.  Could have been a favor to

    convict me back to the D.A

18         MS. LEVY:  For the record, your Honor, can I

19  indicate that, prior to going on the record, Mr. Beal and I

20  had an opportunity, I was able to inform him of the Court's

21  information regarding that relationship.  It is certainly

22  not our position and our point to allege the Court has any

23  conflict in view of that minor interaction a few years ago.

24         THE COURT:  Okay.  Is there anything else that

25  should be on the record?

26         THE BAILIFF:  When do you want the defendant

27  back, your Honor?

28         THE COURT:  At this time, we don't know, because

3

Continuation pg of Cases

Prosecutor misconduct- By allowing witnesses to give False testimony and insight it purposely is Violation also knowing of there intent to lie any Knowledge is a Violation he also help witnesses to change there statement / False testimony in their report and cohearse, rehearse before they came into court to testify to lies.

Witnesses perjured testimony Knowingly used by State Authorities to obtain a conviction and from the deliberate Suppression by those same authorities of evidence favorable to him. These allegations sufficiently charge a deprivation of rights guaranteed by the Federal constitution and if proven, would entitle his release from present custody. Mooney V. Holohan, 294 U.S 103, 112, 55 s.ct 340 342 79 L.Ed. 799 Same as petitioner case and in transcripts.

Prosecutor also witheld witness "Scott Robinson" to come forward to his court order Subpoena tampering with witness and keeping witness hidden so he couldnt testify is a Brady Violation See (EXHIBITS) Subpoena Order (2-3,567) Supports Pyle V. Kansas, and Griffin V. State of california also supports.

The commonwealth orchestrated officer Wakshul's unavailability for trial, conduct which itself is a due process Violation for "The Government may not deny access to a witness by hiding him out like in petitioner case." Freeman V. Georgia, 599 F.2d 65 (5th Cir 1979). See also United States V. Valenzuela Berna, 458 U.S. 858 (1982) Government may violate due process by deporting material witness. The good faith or bad faith of prosecution in failing to disclose Such favorable evidence is immaterial. By failing to Disclose material evidence favorable to Petitioner and by Knowingly presenting a false picture of the evidence to the court and the Jury, The prosecution Violated petitioner right to Fundamental Due process. Failure to disclose material evidence favorable to the defendant invalidates the Verdict and Sentence.

(5) my confession was obtained involuntarily in violation of my forth Amendment, due process right —

(9) The police lineup in which you were identified was impermissibly suggestive —

(10) Lawyer did not represent you effectively at trial —

(a) Direct Appeal lawyer did not represent you effectively in your direct appeal (First Appeal as of right) —

(14) you were denied your sixth Amendment right to a speedy trial —

(17) You were denied your sixth Amendment right to a trial by a fair impartial jury because your were denied a trial by Jury, "or you were tried by a Jury of fewer than six members, or you were convicted by a non-unanimous jury vote) or the community of the Jury was exposed to inflammatory media accounts about your case, or members of certain racial, religious, gender, or age-based (the elderly) groups were excluded from the Jury pool, or because the prosecutor intentionally used his or her peremptory challenges to remove blacks or some other members of a particular racial group or gender from the Jury. —

(21) The prosecution withheld requested evidence that could have helped your case in violation of your Fourteenth Amendment —

(23) The Jury instructions were unconstitutional because they did not tell the Jury that the prosecution must prove all crucial elements of guilt beyond a reasonable doubt, or because the instructions did not tell the Jury that the prosecution must overcome a presumption of innocence in order to convict you —

(24) An error occured during trial that made the trial Fundamentally unfair in violation of the Fourteenth Amendment —

(25) Evidence was insufficient to sustain the Jurys verdict of guilty beyond a reasonable doubt.

(27) The court in which you were convicted did not have the power to convict you because it did not have Jurisdiction.

→ See nexts pg supports constitutional violation

(5) See in petition pgs Ground 1 A1-7 Also See on Transcript pg 14 - 33

(9) Transcripts pgs 223-229 _____ proves picture line up was impermissibly suggestive.

(10) First Attorney Mr mcwilliam didn't represent me effectively See Ground 1, a. second Attorney ms Deborah levy after first committed errors, then filed a conflict-of-interest Deborah was Appointed in the middle of my trial she was unprepared, lacked Knowledge of the case or cases to support like on pg in Transcript sandi CHAPA, 6SR 11 031 pg 29 - 30

(12) Philipp m. Brooks Appellant lawyer didn't represent me Effectively See on petition #10. pg F and G H I, will prove he was non-effective in my direct Appeal.

(14) I was denied a speedy trial by first Attorney mr mcwilliams when i told him i wanted one. i was ignored, courts Dates got waived for long periods of time when ask from the Very beginning of speedy trial.

(17) I was convicted by a non-unanimous Jury vote See in petition Exhibit pg 1147-1148 1551, 1552

(21) prosecution witheld requested evidence that could've help my case an Exculpatory evidence. See in petition Ground #2 2B1-13 requested evidence witheld From prosecution. Also See prosecution tampered with Witness who was subpoena to testify on petitioners behalf but was Somehow hidden and made with by prosecution obvious to keep him hidden and from testifying scott Robinson which in Grounds # 1-7 supports "subpoena orders".

(23) Jury instructions were unconstitutional instructions was un left answered Jury ask or requested instructions regarding the procedures they were to follow if no unanimous decision regarding the charges can be obtained notes was sent by Jury on Two occassion. See Ground 1: a. supporting facts

(24) error occurred during trial that made the trial Fundamentally unfair in the Violation of the fourteenth Amendment Ground 1: a. supporting proves when error occurred by Attorney mr. mcwilliams negligence which change the Jurys decision and outcome of the trial.

(25) Evidence was in Petition/Transcript. threats and deals. In Petition/Transcript Comercion Applied.

(27.) My case occurred in Oakland ca, where i was charge the court Somehow and Someway Bounded me over to another court without my permission or knowledge "Hayward Superior Court" where crime did nt take place court did not have Jurisdiction. (In the middle of my trial)

COURT NORTHERN DISTRICT COURT OF CALIFORNIA should DECIDE WHETHER THE TRIAL COURT PROCEEDING Followed THE LAW WHICH PETitioner CONTENDS iT DiD NOT, MENTION IN CLAIMS PETITION.

EViDENCE WAS INCORRECTLY ADMiTTED:

JURY WAS IMProperLY INSTRUCTED:

TRiAL Judge GAVE INADEQUATE REASONS For A particulAR RuLing:

WHiCH My CLAIMS ALL ADDRESS AND iS LEGAL QUESTIONS FEDERAL COURT SHOULD address.

ExHIBIT IT " goes with pg 7 Simular Cases

1. Packer V. Hill, 291 F. 3d 569 (2002)
2. Arizona V. Fulminate, 499 U.S. 279 (1991)
3. Strickland V. Washington, 466 U.S 668 (1984)
4. Williams V. Taylor, 529 U.S 362, 405 - 406 (2000)
5. Kotteakos V. United States, 328 U.S. a 776, 66 Sct at 1253
6. Chapman V. State of california, 386 U.S. 18, 23, 24
7. ALLEN V. United states, 164 U.S 492, 501 (1896)
8. mooney V. Holohan, 294 U.S. 103, 112, 55 S.ct 340, 342 79 LEd. 79
9. People V. Lyons, 10 cal. app 4th 837, 13 cal Rptr. 2d 112 (1992
10. United V. See cite, as 505 F.2d 845 (1974)

ENCLOSED Also is THE LOWER COURTS Decision

1
2    Superior court of California County of ALAMEDA DaTE June 14, 2007
     EXHIBIT I.
3    In THE Supreme COURT OF CALiFORNiA En BANC DATE MARCH 19, 2008
     EXHIBITS 2
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Ex HiB iT I*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**          Dept. No. 9

Date: **June 14, 2007**          Hon. LARRY GOODMAN, Judge          Fil R. Cruz , Dep.Clk.
                                                                   Not Reported, Reporter

| | | |
|---|---|---|
| **IN RE:** | | |
| **LAFRANCE D. BEAL** | Counsel appearing | No Appearance, Deputy |
| | for Plaintiff | District Attorney |
| **Petitioner** | | |
| VS. | Counsel appearing | No Appearance |
| | for Defendant | |
| **PEOPLE OF THE STATE OF CALIFORNIA** | | |
| **Respondent** | | |

Nature of Proceedings: **EX PARTE PETITION FOR WRIT OF HABEAS CORPUS**          Case No. **123338**
                                                                                PFN: **ARA949**
                                                                                CEN: **4190410**

The defendant is not present.

The Court having reviewed the defendant's Petition for Writ of Habeas Corpus filed on May 21, 2007 orders said Petition denied.

The Petition does not contain any newly discovered information or evidence and Petitioner has failed to demonstrate good cause for a delay of over seven years in the filing of the Petition. Nor has Petitioner explained why the Petition is exempt from the timeliness requirements. (*In Re Clark* (1993) 5 Cal 4th 750, 782-799; *In Re Robbins* (1998) 18 Cal 4th 770, 780. Many of the contentions of Petitioner were either raised on his direct appeal or could have been raised on appeal. It is the general rule that issues resolved on appeal will not be reconsidered on habeas corpus. (*In Re Clark* supra 765; *In Re Waltreus* (1065) 62 Cal 2nd 218, 225). In addition, "in the absence of special circumstances constituting an excuse for failure to employ that remedy, (direct appeal) the writ will not lie where the claimed errors could have been, but were not raised upon a timely appeal from the judgment of conviction. (*In Re Dixon* 41 Cal2nd 756, 759).
Finally, even if considered on its merits the Petition fails to state a prima facie case for relief. Petitioner has not met his burden of demonstrating ineffective assistance of counsel. Petitioner has neither shown that his counsel's conduct failed to conform to an objective standard of reasonable competence, nor has he established that he suffered prejudice due to his counsel's acts or omission.

**CLERK'S CERTIFICATE OF MAILING (CCP 1013a)**
I certify that the following is true and correct: I am a Deputy Clerk employed by the Alameda County Superior Court. I am over the age of 18 years. My business address is 1225 Fallon Street, Oakland, California. I served this EX PARTE PETITION FOR WRIT OF HABEAS CORPUS by placing a copy in an envelope addressed as shown below and then by sealing and placing it for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Oakland, California, following standard court practices.

Lafrance Beal
CDC or ID Number P-01542 6C-129L
P.O. Box 1050
Salinas Valley State Prison
Soleded, CA 93960-1060

Date: June 14, 2007          Executive Officer/Clerk of the Superior Court
                             By _____
                                 Fil R. Cruz, Deputy Clerk

(Rev. 5/3/07)

MARY JAMESON
AUTOMATIC APPEALS SUPERVISOR

JORGE NAVARRETE
SUPERVISING DEPUTY CLERK

SAN FRANCISCO
—

NATALIE ROBINSON
SUPERVISING DEPUTY CLERK

LOS ANGELES



☐  SAN FRANCISCO 94102
EARL WARREN BUILDING
350 McALLISTER STREET
(415) 865-7000
—

☐   LOS ANGELES 90013
RONALD REAGAN BUILDING
300 SOUTH SPRING STREET
(213) 830-7570

## Supreme Court of California

FREDERICK K. OHLRICH
COURT ADMINISTRATOR AND
CLERK OF THE SUPREME COURT

November 29, 2007

Lafrance Beal P-01542
P.O. Box 1050
Soledad, CA. 93960

Re:   **S155209 In re Lafrance Beal on Habeas Corpus**

Dear Lafrance Beal:

In reply to your letter of November 25, 2007 received November 29, 2007, you are advised that your petition for writ of habeas corpus filed August 8, 2007, is still pending.

The California Rules of Court do not set a time limit within which the Supreme Court must act on habeas corpus petitions. The length of time the court requires to rule on such a petition depends on the complexity of the issues raised in the petition, and on the constraints imposed by the court's workload.

While we do not know in advance when the court will decide your case, a copy of the court's decision will be mailed to you the same day it is filed.

Very truly yours,

FREDERICK K. OHLRICH
Court Administrator and
Clerk of the Supreme Court

*R. Gilmore*

By: R. Gilmore, Senior Deputy Clerk

*Exhibit 2*

Court of Appeal, Fourth Appellate District, Div. 2 - No. E040509
**S160118**

# IN THE SUPREME COURT OF CALIFORNIA

---

THE PEOPLE, Plaintiff and Respondent,

v.

MELECIO JUNIOR REYES, et al., Defendants and Appellants.

---

The time for granting or denying review in the above-entitled matter is hereby extended to and including April 23, 2008, or the date upon which review is either granted or denied.

SUPREME COURT
**FILED**

**MAR 1 7** 2008

**Frederick K. Ohlrich Clerk**

Deputy

*Acting Chief Justice*

*Exhibit* 2

**S155209**

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

---

In re LAFRANCE BEAL on Habeas Corpus

---

The petition for writ of habeas corpus is denied. (See *In re Robbins* (1998) 18 Cal.4th 770, 780; *In re Clark* (1993) 5 Cal.4th 750.)

SUPREME COURT
**FILED**

MAR 1 9 2008

Frederick K. Ohlrich Clerk

---

Deputy

---

GEORGE
Chief Justice

LaFrance Beal
Plaintiff pro se

Court <u>Northern District Court of California</u>

case #123338
motion for Appointment
of counsel.

Lafrance Beal
Plaintiff

VS.

Warden Evans
Defendant

Plaintiff moves this court for an order appointing counsel to represent me because i cannot afford to employ an Attorney. This motion is based on the plaintiff affadavit in Support of for leave to proceed in forma pauperis for appointment of counsel. Legal authority for appointment and compensation of counsel is 28 usc § 1915(d) 18. usc § A(g) mc, clain V. manson, 343 F. Supp 382 (1972)

Dated 3/25/08

Plaintiff Signature  LaFrance Beal

## Prayer For relief

Petitioner is without Remedy save By writ of Habeas corpus. Wherefore, Petitioner prays the court:

1, Issue a writ of Habeas Corpus,

2, Declare The Rights of the petitioner,

3, Appoint counsel petitioner is indigent,

4, Grant any other Further relief the court Deems proper.

I Declare under penalty of perjury that the foregoing is true and correct.

Date : 3/25/08

Respectfully Sub: Pro-per

Signature Lafrance Beal

# PROOF OF SERVICE BY MAIL

## BY PERSON IN STATE CUSTODY

(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, Lafrance Beal , declare:

I am over 18 years of age and a party to this action. I am a resident of Salinas Valley State prison

Prison,

in the county of Soledad Ca 93960 ,

State of California. My prison address is: P.o. Box 1050 Salinas Valley State prison Soledad ,

Ca 93960-1020 .

On 3/25/08 ,
(DATE)

I served the attached: Northern District court of California

Also Attorney General received a petition
(DESCRIBE DOCUMENT)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage

thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional

institution in which I am presently confined. The envelope was addressed as follows:

I declare under penalty of perjury under the laws of the United States of America that the foregoing

is true and correct.

Executed on 3/25/08           Lafrance Beal
(DATE)                        (DECLARANT'S SIGNATURE)

Salinas Valley STATE prison
LAFRANCE BEAL
P018+2 6C-129L
P.O.Box 1050
Soledad CA, 93960





To. ATTorney GENERAL off.

COURT NORTHERN District court of California

450 Golden GATE Avenue
P.O. Box 36060
San Francisco CA. 94102



SALINAS VALLEY STATE PRISON
LAFRANCE BEAL
P-01542 6C-129L
P.O. BOX 1050
Soledad, CA. 93960



UNITED STATES POSTAGE
$04.
02 1A
0004397458    MAR 26
MAILED FROM ZIP CODE

Court Northern District Court of California

450 Golden Gate Avenue,
P.O. Box 36060
San Francisco CA. 94102



RECEIVED
MAR 28 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

LEGAL MAIL

STATE PRISON
GENERATED MAIL